## New Ohio Washed Coal Company v. Coal Belt Railway Company.

1.  FREEHOLD—*when Appellate Court has jurisdiction of appeal notwithstanding, is involved.*   The Appellate Courts of this state have jurisdiction of an appeal from an interlocutory order granting an injunction notwithstanding a freehold may have been involved.

2.  INJUNCTIONAL ORDER—*how far, reviewed upon interlocutory appeal.*   Upon an appeal from an interlocutory order granting an injunction, the question for determination is whether the court below improperly exercised its discretionary powers in respect to issuing an injunction *pendente lite*, and unless it clearly appears that it has done so, the order should be affirmed.

Appeal from interlocutory injunctional order. Appeal from the Circuit Court of Williamson County; the Hon. WARREN W. DUNCAN, Judge, presiding.   Heard in this court at the August term, 1904. Affirmed.   Opinion filed September 21, 1904.

TENNEY, COFFEEN, HARDING & WILKERSON, for appellant.

A. W. UNDERWOOD and F. W. RAYMOND, for appellee; FORMAN & WHITNEL and J. A. McKEOWN, of counsel.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This is an appeal from an interlocutory order of the Circuit Court of Williamson county, granting a temporary injunction against appellant upon a bill exhibited in that court by appellee.

Counsel for appellee suggest and contend that the issues in this case involve a freehold, and upon that suggestion and contention they challenge the jurisdiction of this court to entertain the appeal.

Under our view of the statute, it is immaterial to the right of appeal to this court whether the issues do or do not involve a freehold. The Act of 1887 provides "that whenever an interlocutory order or decree is entered in any suit pending in any court of this state, granting an injunction, * * * an appeal may be taken from such interlocutory order or decree to the Appellate Court of the district wherein is situated the court granting such interlocutory order or decree." This is the only provision in our law for appeal from an interlocutory order, or an interlocutory decree, and it applies to all cases in which such orders or decrees as are specified in the act may be rendered, notwithstanding the Supreme Court may have exclusive jurisdiction to review all final decrees in some of such cases.

The Appellate Court of the First District, in Hill v. Tarbel, 91 Ill. App. 272, by Mr. Justice Freeman, says: "The constitution provides that the Appellate Court shall have jurisdiction of 'such appeals and writs of error as the general assembly may provide.' * * * By the Act of 1877, creating the Appellate Court, jurisdiction was withheld from it in appeals and writs of error from final judgments, orders and decrees in 'criminal cases, not misdemeanors, and cases involving a franchise or freehold, or the validity of a statute.' It was so withheld, not by the constitution, but by the legislature. * * * Subsequently, by the Act of 1887, it was provided 'that whenever an in-

terlocutory order or decree is entered in any suit pending in any court in this state, granting an injunction   *   *   * an appeal may be taken from such interlocutory order or decree to the Appellate Court.' Prior to this Act, appeals could not be taken in this state from interlocutory orders or decrees. By the terms of the Act, jurisdiction of such interlocutory appeals was conferred upon the Appellate Court."

Appellee's bill sets up in substance and effect that appellee was and is the owner and operator of a railroad wholly within Williamson county, Illinois; that one Charles E. Owen was the owner in fee or under recorded leases of certain coal lands in sections 31 and 32, T. 8 S., R. 2, E. 3rd P. M., and in section 36, T. 8 S., R. 1, E. 3rd P. M.; that appellee had established connections and joint traffic arrangements with the Illinois Central Railroad Company, the Chicago and Eastern Illinois Railroad Company, and the St. Louis Valley Railroad Company, for the handling of coal in carloads from coal mines situated upon its switches and tracks; that said Owen purposed opening and constructing three or more coal mines on said lands, and in pursuance of such purpose, on April 28, 1903, entered into contractual relations with appellee in the form of a deed from said Owen to appellee, containing the following provision: " The consideration of this deed includes the agreement of the grantee for itself, its successors and assigns, to furnish, lay and maintain rails, frogs, switches and fastenings on such tracks or switches graded and furnished with ties by the grantor or his assigns or lessees of said land, running from the tracks of the grantee by the most direct practicable course as may be necessary to operate a railroad and coal mine to such mines, as may be constructed by said grantor, or his assignees or lessees, on lands now held in fee or under recorded leases by said grantor in sections 31 and 32, T. 8 S., R. 2, and section 36, T. 8 S., R. 1, E. of the 3rd P. M.;" that said deed and contract was duly executed by said Owen and duly delivered to, and accepted by appellee; that in May, 1903, appellant acquired from Owen, section

36 of the lands above described, with full knowledge of the deed and contractual relations existing between Owen and appellee; that since the grant from Owen to appellant, it has, in pursuance of the original purpose, sunk a coal shaft and opened a mine in said lands, and appellee has in pursuance of its said undertaking and agreement constructed 11,800 feet of standard gauge railway track, at a cost of more than $40,000; that no further or other agreement has been made between Owen, or appellant, his assignee or grantee, and appellee, than the one above quoted; that the value of the land conveyed to appellee by the deed from Owen was not to exceed $500, and that it was the understanding between appellee and Owen that appellee should be compensated for its large outlay of money to be expended in the construction and maintenance of said tracks, by the use of same in hauling freight from the mines to be opened and operated in said lands, and that appellant, the assignee or grantee of Owen, at the time of acquiring its interests in said lands and during all the time of the constructing of its mines and of the constructing by appellee of its tracks, knew all the terms and conditions of the contract under which appellee was required to and did lay and maintain its tracks to such mines.

The bill further alleges that appellant and others named therein as co-defendants, have conspired together to interrupt, hinder and destroy appellee's business, and threaten to enter upon and use its switches and tracks without any agreement of any sort with appellee and without paying or offering to pay due compensation therefor, and that such acts and conduct will be a continuing trespass and work irreparable injuries to appellee.

The bill contains a prayer for summons, and for injunction without notice; is duly supported by affidavit as to the truth of its contents, and as to the peril of giving notice.

The bill was exhibited in open court, and upon appellee (complainant below) entering into good and sufficient bond in the sum of five thousand dollars, a temporary writ was ordered, enjoining appellant and its co-defendants, in effect,

New Ohio Washed Coal Co. v. Coal Belt Ry. Co.

from entering upon, tearing up or interfering with the tracks and from using the same or moving or operating any engine or cars upon or over them, except such as were supplied by appellee, until the further order of the court.

At this point it must be noted that no answer has been filed to the bill, nor any evidence produced. There has been no final determination of any feature of the case, by the trial court. Not even a demurrer to the bill or motion to dissolve or modify the temporary injunction was entered in that court. Upon such state of record, our duty is a narrow one. We should not in any respect, nor to any extent, attempt to anticipate and discuss the issues that might arise upon some form of motion or special demurrer or that might arise or remain upon the coming in of answer and proofs. We should not in any respect prejudge the merits of the case further than the same may be necessarily involved in the exercise of the discretionary power of the trial court in granting the mere temporary order appealed from. We think the true rule applicable to this class of appeals and to this state of records, is as laid down by Mr. Justice Jenkins in Chickering v. Chickering & Sons, 120 Federal Reporter 69. That case was an appeal, as the one at bar is, from an interlocutory order of a *nisi prius* court, granting a temporary injunction. The case had not been heard upon its merits and no final order or decree had been entered. The court there said : "The question for determination is whether the court below improperly exercised its discretionary powers in respect of issuing an injunction *pendente lite*. Unless it clearly appears that it has so done, the order should be affirmed. It is not desirable— if it be entirely proper—that we should at this time review the merits of this controversy.  *  *  *  It is within the power of the court below at any time to modify the order (or dissolve it) if any of its restraints be unwarranted."

It does not now appear to us that the discretion of the court below was improperly exercised in granting the tem porary writ upon good and sufficient bond and restraining the acts complained of until such time as the case might be

fully heard, or at least until such time as, under the five-day statute, there might be a partial hearing.

The order of the Circuit Court granting temporary injunction is affirmed.

*Affirmed.*