## The West Side Hospital of Chicago, et al., v. Daniel A. K. Steele, et al.

### Gen. Nos. 12,878 and 12,879.

#### CONSOLIDATED FOR HEARING.

1. INJUNCTION—*when party may appeal from order of.* A party to a cause in which an injunction has been granted may appeal from the order granting the same notwithstanding such injunction is not specifically against such defendant, provided such defendant is vitally affected thereby.

2. INJUNCTION—*when allegations of bill taken as true.* Upon appeal from an order granting a preliminary injunction, the allegations of the bill will be taken as true where no answer or affidavits have been filed by the defendants to the bill.

3. PRELIMINARY INJUNCTION—*when order granting, will be affirmed.* Unless it clearly appears that the court improperly exercised its discretionary powers in issuing an injunction *pendente lite,* the order will be affirmed.

4. EQUITY—*jurisdiction of, to regulate election of · corporate officers.* Equity has jurisdiction to protect the rights of minority stockholders with respect to the holding of an annual election of directors according to law and with respect to enforcing the rights of such minority stockholders to cumulate their votes at such an election as provided by statute.

5. ANNUAL MEETING OF STOCKHOLDERS—*when adjournment of, illegal.* An adjournment of an annual meeting of a corporation made for the purpose of preventing the minority stockholders from exercising their legal rights is unlawful.

Appeals from interlocutory orders of injunctions. Appeals from the Circuit Court of Cook County; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed February 20, 1906.

**Statement by the Court.** These appeals are from interlocutory orders of injunctions. The restraining order appealed from in No. 12878 was entered on January 15, 1906, without notice, and was limited in time, expiring on January 18, 1906. The restraining order appealed from in No. 12879 was entered on January 22, 1906, on full notice and after a hearing, continued the order of January 15, 1906, in full force until the final decree. The appeals were consolidated for hearing.

The bill was filed by complainants Steele and Davison, appellees, who allege that they are respectively the duly elected and qualified president and treasurer and are stockholders and directors of the defendant the West Side Hospital of Chicago, which is a corporation organized under the laws of the State of Illinois for the care of the sick, with a capital stock of $50,000 divided into 500 shares of $100 each, and sets out the shareholders and the number of shares held by each shareholder; that after the organization was completed it adopted certain by-laws, a copy of which is attached to the bill as an exhibit; that the corporation acquired the fee to premises known as No. 819 West Harrison street in which to conduct its hospital and that it is carrying on the

same therein; that said hospital is and has been for several years continuously occupied and used by a large number of patients who pay for treatment and hospital service and the income therefrom during the year 1905 aggregated upwards of $60,000; that by resolution of the stockholders adopted at the meeting to organize and elect the first board of directors on January 30, 1896, the board of directors was divided into three classes, the term of office of the first class to expire on the day of the annual election of directors then next ensuing, the term of office of the directors of the second class one year thereafter and of the third class two years thereafter; that after the annual meeting of stockholders in January 1905, the annual meeting of directors was held on January 11, 1905, and complainant Steele was re-elected president for the ensuing year, and complainant Davison was re-elected treasurer for the year next ensuing, and defendant Noble was re-elected secretary; that at the annual meeting of stockholders on January 10, 1906, the terms of office of the defendants Newton and Noble as directors expired, and at said meeting after receiving the reports of the officers, defendant Hartman offered a motion that the meeting adjourn until April 11, 1906, and upon said motion 282 2/39 shares of stock owned by defendants Davis, Newton, Noble, Weiner, Conley, Smyth, Hartman and Scott were voted in favor of said motion and 217 37/39 shares of stock were voted against said motion and thereupon said Davis who was acting chairman of said meeting declared the motion carried and that said meeting was adjourned to April 11, 1906, against the protest of complainants then made; that at the meeting it was announced by the complainants and other stockholders that they would cumulate their votes for one director only in place of said directors Noble and Newton, leaving those opposed to complainants to elect the other of the two directors; that the one director so to be elected by complainants' votes co-operating with complainants who were then directors would constitute a majority of the board favorable to complainants, and that they would re-elect the old officers and continue the present management, and it was determined by the defend-

ants, upon this announcement, to fraudulently adjourn the stockholders' meeting without electing directors, and then immediately upon said adjournment to convene the directors in annual meeting and proceed to the election of officers; and the defendants Davis, Noble and Newton accordingly convened the directors in a meeting which complainants attended, but when it was announced that the meeting would proceed to the election of officers, the complainants protested against such election and withdrew from the meeting; whereupon the defendants Davis, Noble and Newton proceeded to hold the annual meeting of directors and elected defendant Davis president, the complainant Steele vice-president, the defendant Newton treasurer and the defendant Noble secretary and the said Davis, Newton and Noble entered upon the duties of such officers and took possession of the books, papers, money and properties of said corporation, changed the combination of the safe in the office and caused a letter to be sent signed by Noble as secretary to the cashier of the Illinois Trust & Savings Bank where the bank account of the corporation was kept, directing him not to honor any checks after that date signed by complainant Davison as treasurer, but in place thereof to honor checks signed by Newton as treasurer; and on the same day caused a letter to be sent to the Columbus Safe Deposit Vault Company, where the corporation kept its valuable papers, notifying it not to give admission to complainant Davison but to keep the safety deposit box until the defendant Newton could qualify as treasurer anew; that complainant Steele in behalf of himself and of complainant Davison went to the hospital building on January 12, 1906, and there found defendants Davis and Newton in the office of the corporation assuming to act as president and treasurer thereof, and requested them not to assume to act as such officers until the stockholders at the annual meeting for 1906 had elected directors for the class whose terms had expired, but that both of said defendants replied that they were president and treasurer respectively and they would act as such officers; that by reason of the wrongful acts of the defendants the credit of the corporation which

has hitherto been good has been greatly impaired and dissipated; that the bank has announced that it will not honor any checks drawn by anybody on said account until it has been legally determined who is the treasurer, and the Safe Deposit Vault Company has announced it will admit nobody to said safe deposit box until it has been determined who is the treasurer of said corporation, and merchants have refused to sell any goods to said corporation except for cash, and patients have announced that they will not pay for services received until they can know to whom they can pay rightfully, and employees have announced that they will not obey orders from any source until they can know from some legal determination who is the official head; by means of which the financial interests of the corporation have been greatly impaired, and will be irreparably injured and business paralysis will result unless the defendants Davis and Newton be enjoined without notice according to the prayer of the bill.

Complainants file the bill on behalf of themselves and any and all stockholders, and pray that the pretended election of officers be declared illegal and void; that Davis be held and decreed to have unlawfully intruded into the office of president of the corporation, and Newton be decreed to have unlawfully intruded into the office of treasurer; that complainants Steele and Davison be decreed to be president and treasurer respectively because no successors have been elected; that Davis and Newton be enjoined from intruding into the respective offices of president and treasurer and from assuming the duties thereof and from interfering with the complainants respectively in the discharge of their duties as president and secretary, and that the proper election for directors be held, and for other relief.

The bill was duly verified. By amendments to the bill the Illinois Trust & Savings Bank and the Columbus Safe Deposit Co. were made parties defendant and relief prayed as against them. No answer was filed.

CHARLES R. FRANCIS and F. M. WILLIAMS, for appellants.

PECK, MILLER & STARR, for appellees.

West Side Hospital v. Steele.

Mr. Presiding Justice Smith delivered the opinion of the court.

A motion was made by appellees in both appeals to dismiss them on the ground principally that The West Side Hospital of Chicago was not a party to the order appealed from. This motion in each case was reserved to the hearing.

The West Side Hospital of Chicago was properly made a party to the bill of complaint. It is vitally interested not only in the main litigation and the decree which may be entered, but it is also interested in the injunction orders appealed from, for they affect directly the management of its property. And this is true although the injunctions do not run directly against the corporation itself. A corporation may be, and in this case is, affected by an order which operates upon its officers, or those who are acting as its officers and the custodians and managers of its property for the time being, whether officers of the corporation or not. A party who is affected by an order or decree has a right, we think, of appeal, even though such party may not be specifically mentioned in such order or decree. Such a party should be before the court on appeal, if, as in this case, such party is a party to the record. Elliott on Appellate Procedure, secs. 139, 143, 160.

In Louisville v. Kean, 57 Ky. (18 B. Monroe), 10, an appeal was taken from a judgment in a *mandamus* case directing a writ to issue against the mayor and members of the general council of the city of Louisville. The city took an appeal, and on motion to dismiss the appeal upon the ground urged here that, not being a party to the order, it had no right to appeal, it was held that the appeal was properly prosecuted in the name of the city.

In Derrick v. The Lamar Ins. Co., 74 Ill., 404, it was held that where, on a creditor's bill, the cause was referred to a master in chancery to take proofs of all claims against the estate of the defendant which might be presented to the receiver, and a claim was sought to be proven before the master by a creditor who was not a party to the bill, and the master reported his disallowance of the claim and the court

overruled exceptions taken to the report and sustained the report, an appeal would lie on behalf of such claimant, though he was not a party to the suit.

We think these appeals are properly prosecuted and that the motion to dismiss in each case must be denied.

It is urged on behalf of appellants that the main, if not the only, question presented by the bill of complaint is the validity of the election of the president and treasurer of the corporation at the directors' meeting of January 10, 1906; and that a court of equity will not entertain jurisdiction of a suit, the purpose of which is merely to test the legality of the election or the removal of officers of a corporation. As to the principle of law involved in this contention we have no dissent to express. It is too well established to admit of discussion or the citation of authorities. We cannot, however, agree with counsel in their statement of the case presented by the bill. As we view it, the case stated in the bill is not merely one involving the validity of an election of officers, but it involves the rights of the minority stockholders of the corporation, under the constitution and laws of this State, to have an annual election of directors held according to law, and to cumulate their votes at such an election; and that the officers and management of the corporation shall only be installed in control of the corporation and its property and business by, through, and in compliance with the law, and the legal by-laws of the corporation. The minority stockholders of a corporation have property rights in the corporation and its assets and management, which the directors, their trustees, may not ignore and set aside. Nor can the majority of the stockholders, broad as their powers are, override the organic law of the corporation for the illegal purpose of preventing the minority from securing the representation in the directory which the shares of stock owned by them enable them to elect.

The bill shows that there was a conspiracy between three of the directors and a majority of the stockholders to adjourn the annual stockholders' meeting before the election of the directors to succeed those whose terms of office expired at

the annual meeting, and then that the directors, including defendants Noble and Newton, whose terms of office had expired (but who were still acting as directors until their successors should be elected) should at once, upon the adjournment of the annual meeting to a day certain, proceed to the election of officers of the corporation. The object of this scheme was to prevent the minority stockholders from electing a representative in the directory, as they could have done and had a legal right to do, by cumulating their stock vote on one candidate for director.

Section 4 of article 3 of the by-laws provides: "Regular meetings of the board of directors shall be held immediately after the adjournment of each regular meeting of the stockholders," etc. This by-law construed in connection with section 1 of article 3 of the by-laws which provides for the election of directors at the regular annual meeting of the stockholders, means that when the directors have been chosen at the annual meeting, the new board of directors shall immediately hold a regular meeting and proceed to the election of officers of the corporation as provided in section 1, article 4, of the by-laws. By the adjournment of the stockholders' meeting until April 11, 1906, it became impossible under the by-laws to hold the regular annual meeting of the board of directors until that date for the purpose of electing officers. This scheme involving as it did not only a denial of the rights of the minority of the stockholders under the constitution and statute but a violation of the by-laws as well, was a fraud upon the minority stockholders, conceived and executed by men occupying a fiduciary relation to the stockholders. It was a clear violation of their duty and of their trust. The acts of the defendants to the bill resulted in putting the business and property and funds of the corporation in the hands of men who are not legally entitled to act for the corporation.

The contention of appellants is that there is an adequate remedy at law for the situation shown in the bill, by *quo warranto*. We do not think so. As said in Bartlett v. Gates, 118 Fed. R., 66: "The stockholders of this corpora-

tion are legally entitled to have a meeting of stockholders called, at which they can express their choice for directors of the company, and the court will afford them an opportunity to exercise that right under conditions that will secure to each one of them legally entitled to vote, the right to do so.

"The complainant's remedy at law is not adequate. The remedy at law would leave the parties free to renew the contest on the same and other like lines that have thus far stifled the voice of the stockholders." See also Dodge v. Woolsey, 59 U. S., 331.

If the majority stockholders have the right for the purpose charged in the bill and shown by the facts alleged therein to adjourn the annual stockholders' meeting to April 11, 1906, they may still further adjourn it, until the next annual meeting, and may adjourn that meeting and so deny indefinitely to the minority its right to vote for directors, and thus perpetuate the officers placed in control of the corporation by the illegal methods indicated above. Thus, any and all *quo warranto* proceedings would be rendered abortive as rapidly as they could be brought to final conclusions.

We do not hold that a regular annual meeting of stockholders may not be adjourned for a reasonable time for legitimate reasons. But, for the purpose of preventing the minority stockholders from exercising their legal rights to elect other directors, and continuing the old board of directors in existence to elect officers as shown by the bill, an adjournment of the meeting may not be made over the protest of the minority stockholders or any of them.

There can be no doubt that questions as to the election of officers of a private corporation can and should be determined at law and by *quo warranto* proceedings, but while this is the general rule, where there are other elements in the case which make it proper that a court of equity intervene "then the mere fact that the questions presented make it necessary, for the purpose of such intervention, to determine which of two sets of officers are the lawful officers of a private corporation, will not deter the court of equity from acting." Garmire v. American Mining Co., 93 Ill. App., 331, and

cases there cited; Blinn v. Riggs, 110 Ill. App., 37; Chicago Macaroni Co. v. Boggiano, 202 Ill., 312.

The court having jurisdiction in equity, as we think, to hear and determine the case presented by the bill, the next question is, did the court improperly exercise its discretionary power in granting the temporary orders appealed from.

The rule governing us on this question is that unless it clearly appears that the court below improperly exercised its discretionary powers in issuing the injunction *pendente lite* the order should be affirmed.    New Ohio W. C. Co. v. Coal Belt Ry. Co., 116 App., 153; High on Injunctions (4th ed.), sec. 1696; New Music Hall Co. v. Orpheon Music Hall, 100 Ill. App., 278.

"No answer or affidavits having been filed by appellants the bill must be taken as true, so far as the facts alleged are well pleaded, in considering whether the injunction was properly issued."    New Music Hall Co. v. Orpheon Music Hall Co., *supra*.    The bill, we think, shows a clear case for intervention by injunction.    The order appealed from in No. 12878 was entered without notice.    This was a limited order as to time, expiring three days after it was entered. We think the showing in the bill was sufficient to justify the court in entering the order.    It had the effect merely to hold matters in *statu quo* until the court could hear the application for an injunction on full notice.    We find no error in entering the order in the first instance without notice.

Holding the views above expressed as to the case made by the bill, it does not appear to us that the discretion of the court below was improperly exercised in granting the order in No. 12879, continuing the injunction in force until the final decree.

The order in each case is affirmed.

*Affirmed.*