## City of Chicago, Appellee, v. The People's Gas Light & Coke Company, Appellant.

## Gen. No. 18,182.

1. INJUNCTIONS—*when discretion abused in granting preliminary injunction.* While it is true generally speaking that the matter of granting a preliminary injunction rests in the sound discretion of the

City of Chicago v. P. G. L. & C. Co., 170 Ill. App. 98.

trial court and that appellate courts are averse to interfering with the proper exercise of such discretion, yet the authorities hold that an improper exercise of such discretion is shown if it appears that some established rule of law or principle of equity has been violated.

2. INJUNCTIONS—*what essential to granting preliminary.* To warrant a court of equity in granting a preliminary injunction some fact or facts must be made to appear from which the court can see that unless prevented the acts sought to be enjoined will in all probability be committed to the injury of the complainant.

3. INJUNCTIONS—*what essential to granting of preliminary, to restrain commission of alleged threatened acts.* If a preliminary injunction is sought to restrain the commission of acts which it is charged will be done by the defendant unless restrained, the bill should set up facts and not conclusions to show that such charge is well founded.

4. INJUNCTIONS—*what not. sufficient to authorize granting of preliminary.* The mere fact that it will do no harm to a defendant to issue an injunction against him *pendente lite* is not a sufficient ground for granting an injunction.

5. INJUNCTIONS—*when "impounding feature" erroneous.* Upon a bill filed by a city against a gas company to prevent its charging and collecting rates for gas furnished to consumers in excess of those fixed by an ordinance set up, a preliminary mandatory impounding order, requiring such gas company to pay over to a trustee during the pendency of the action, all monies charged and collected in excess of the ordinance rates and restraining such company from using or disposing of any such monies, is erroneous.

6. INJUNCTIONS—*what essential to granting of mandatory preliminary.* "While a court of equity is always reluctant to grant a mandatory injunction upon an interlocutory application before final hearing, it may do so in an extreme case where the right is clearly established and the invasion of the right results in serious injury."

7. PAYMENTS—*when character whether voluntary or otherwise cannot be adjudicated.* In the absence of an existing issue and proof with respect thereto an appellate court cannot adjudicate as to whether payments for gas made by consumers to a gas company have been voluntary or under protest.

Bill for injunction. Appeal from interlocutory order of the Circuit Court of Cook county; the HON. KICKHAM SCANLAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed. Opinion filed April 25, 1912. Rehearing denied April 29, 1912.

SEARS, MEAGHER & WHITNEY, for appellant; NATHANIEL C. SEARS and JAMES F. MEAGHER, of counsel.

WILLIAM H. SEXTON, for appellee; MACLAY HOYNE, BRYAN Y. CRAIG and JOSEPH F. GROSSMAN, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from an interlocutory injunction order, entered after notice and argument, but before answer filed, upon complainant's motion based solely on the bill of complaint and exhibits thereto.

The bill was filed October 31, 1911, and avers, in substance, that the defendant gas company is an Illinois corporation engaged in the manufacture, sale and distribution of gas to the people of Chicago; that through its system of pipes laid in the public streets and alleys, it supplies gas to over five hundred thousand consumers, one of whom is the complainant, the city of Chicago; that complainant's gas bills for the last year exceeded two hundred thousand dollars; that all such consumers, including complainant, are wholly dependent upon the defendant for their supply of gas, there being no other concern in Chicago properly equipped to furnish such gas; that by an ordinance of the City Council passed February 14, 1906, and accepted by the gas company, the maximum net price or rate for gas furnished to consumers within the city limits during a period of five years then next ensuing was fixed at eighty-five cents per thousand cubic feet; that in October, 1910, one of the standing committees of the City Council of Chicago began an investigation for the purpose of ascertaining what rates would be just and reasonable to be charged and collected for gas to be supplied during the succeeding period of five years; that said committee employed one Hagenah, who, with a number of assistants, accountants and engineers spent about six months time examining the books, papers and records of the gas company, preparing therefrom an inventory and appraisal and collecting and tabulating data concerning the cost of construction, receipts, operating expenses and other matters

bearing upon the question of the value of the company's property; that said Hagenah made a report to the council committee, covering eighty printed pages, recommending a rate of 77 cents per thousand feet as just and reasonable, but left all his data and memoranda in the company's vaults, and later removed them from the state, claiming to own the same; that the committee then employed one Bemis, who is averred to be a man of large experience and high reputation in such matters and who had been employed as such in connection with the previous revision of gas rates in 1906; that though often requested, the company refused to lend any assistance to Bemis or permit him to examine its property, books or papers, and refused to attend any of the committee's meetings except that on one occasion one of its attorneys appeared and made a speech criticising the committee; that thereupon Bemis made a thorough and careful analysis of Hagenah's report, and from it and such other information as was available, he made a report covering thirty printed pages recommending graded rates averaging 70 cents per thousand feet; that after full and careful discussion of both reports in many meetings, the committee reported to the council recommending for passage an ordinance which provided that for the ensuing five years, the maximum net gas rates should be established as follows: first year, seventy-five cents per thousand cubic feet; second and third years, seventy cents, fourth and fifth years, sixty-eight cents; that the committee's report was, on motion of its chairman, deferred and ordered published in the council proceedings, and was so published with the reports of both Hagenah and Bemis, on July 10, 1911; that on July 17, 1911, the ordinance thus prepared and recommended was passed, approved by the Mayor the next day, published in a daily newspaper on July 31, 1911, and became effective August 10, 1911. This ordinance, after fixing the rates to be charged as

above stated, provides a penalty of not less than $25 nor more than $200 for each violation.

The bill further avers that the rates thus established are just and reasonable, and that it became the duty of the gas company to comply with the ordinance; that it has failed to do so, "does not intend to, and unless required so to do by an order or decree of this court, will not comply with the provisions of said ordinance passed July 17, 1911, but will charge, exact, demand and collect of and from" the complainant "and all other consumers of defendant's gas in said City of Chicago more than seventy-five cents and more than eighty cents for each 1,000 cubic feet of gas consumed or used during the year beginning August 10th, 1911, and more than seventy cents" during the second and third years, and "more than sixty-eight cents" during the last two years of the five years period; that the defendant company claims that such rates are unjust, unreasonable, confiscatory and do not afford a reasonable return upon the value of its property; and claims further that the ordinance violates several provisions of the constitution of this State and of the United States; that such claims are based in part upon the further claim that the value of its property is the face value of its capital stock and outstanding bonds, but it is averred that large amounts of such stock and bonds were issued wholly without consideration, or without adequate consideration in the course of sundry alleged successive mergers and consolidations with other corporations, and that such amounts do not represent any actual value and cannot lawfully be considered in determining what are reasonable maximum rates to be charged by the defendant for its product; that while the defendant claims that the present value of the property used in its business is over $70,000,000, its actual value does not in fact exceed $45,000,000.

The bill further avers that on July 31, 1911, the de-

fendant company filed in the Circuit Court of Cook County a petition, a copy of which is attached to the bill of complaint as an exhibit and by reference is made a part thereof. Said petition recites the passage of the two ordinances of February 14, 1906, and of July 17, 1911, the proceedings of the Council Committee leading up to the passage of the latter ordinance, the investigation of the company's books, papers and property made by the agents of the city from October, 1910, to April, 1911, charges in substance that the first, or Hagenah report, was ignored by the committee for political reasons, and that the subsequent investigations by the committee and by Bemis were not conducted in good faith; and avers that the defendant is paying dividends of only seven per cent per annum, which is claimed to be a minimum of profit to which it is reasonably entitled. The petition further sets out at length the defendant's claims as to the value of its property and the amount of its receipts and operating expenses, deduces therefrom the conclusion that it would have been impossible for the agents of the city to recommend a lower rate than 80 cents for each thousand cubic feet of gas supplied, except by making unjust valuations of the company's property, and concludes, without naming any one as defendant, with a statement that the rates prescribed by the ordinance of July 17, 1911, are unjust and unreasonable, and a prayer "to review and determine the same as provided by law, and to that end to make all such ancillary or other orders as shall seem meet and proper."

The bill of complaint further avers that no process was issued on said petition and no appearance, plea or answer was filed; but a notice was served on the Corporation Counsel of the city to the effect that on August 1, 1911, the gas company would apply to Hon. John Gibbons, Judge of the Circuit Court, to take action on the petition; that the Corporation Counsel appeared before Judge Gibbons and denied the juris-

diction of the court to take any action on such petition; nevertheless, an order was entered the next day providing that until final action by the court ''herein'' the gas company ''shall charge, collect and receive'' for gas supplied after August 7, 1911, not to exceed 80 cents per thousand cubic feet, restraining it from collecting more than at that rate and also restraining the city from enforcing the ordinance against the gas company, with a provision that if the ordinance rates shall be finally adjudged to be just and reasonable, the excess paid by consumers should be returned to them by the company.

The bill further avers that from July 24, 1911, to August 7, 1911, the defendant charged and collected at the rate of eighty-five cents and that ever since August 7, 1911, has charged and collected at the rate of 80 cents per thousand cubic feet in pursuance of the order entered on that day before Judge Gibbons, which acts, it is averred, are in violation of the ordinance and constitute an abuse of the defendant's corporate powers and duties; that all the proceedings before Judge Gibbons were void and of no effect as against the city and other consumers of gas; that defendant has threatened that if upon the hearing on said petition that court shall prescribe rates unsatisfactory to defendant, it will then file a bill in chancery attacking the reasonableness of such rates and of the ordinance rates or both, and seek a hearing *de novo*; that the defendant may dismiss such petition at any time, and that consumers of gas are entitled to have the questions involved conclusively determined in one suit so as to bind all the parties thereto.

The bill further avers that the complainant brings this suit for itself as a consumer of gas and on behalf of all other consumers, ''and also in its capacity as representing the inhabitants of the City of Chicago;'' that unless the consumers of gas yield to the demands of the defendant and pay prices for gas exceeding the

City of Chicago v. P. G. L. & C. Co., 170 Ill. App. 98.

maximum rates prescribed by the ordinance of July 17, 1911, the defendant will discontinue the supply of gas to such consumers, and a multiplicity of suits will follow; that all such suits would arise from the same common cause and involve similar facts; that if complainant should bring suits for violations of said ordinance, the great number of such suits would impede the business of the courts and of the public; that if the ordinance is not enforced pending a judicial determination of its reasonableness, and it shall hereafter be adjudged to be just and reasonable, numerous suits must be brought to recover the excess payments, to the serious inconvenience and loss of consumers and the public generally, "unless an order be entered herein requiring and directing the defendant to pay and turn over to the clerk of this court or to some other person to be named by the court, all moneys that may be collected by said defendant from consumers of gas during the pendency of this suit in excess of the maximum rates and charges for gas prescribed by said ordinance of July 17, 1911."

The bill prays that upon the final hearing the defendant may be enjoined from violating the ordinance of July 17, 1911, and that on the filing of the bill an order may be entered enjoining it, "as was done in the aforesaid order entered by this court on August 2nd, 1911," from charging or collecting more than 80 cents for each 1,000 cubic feet of gas consumed, until the further order of the court, and requiring and directing it to pay over to the clerk of the court or some other person to be named by the court, all moneys collected from consumers, in excess of the maximum rates prescribed by such ordinance, to be held subject to the further order of the court; that defendant may schedule all its property and all records and data relating to the cost and value of the same, the amount of its stocks and bonds and the consideration therefor, its income and expenses, and that it be required

to permit complainant or its agents to inspect defendant's books, papers and property, and for such other relief as equity may require.

After a demurrer to this bill had been argued and overruled, the court entered the interlocutory injunctional order in question here. In substance that order provides first that the defendant, its officers and agents be and are enjoined and restrained until the further order of the court, from charging or collecting more than 80 cents per thousand feet for gas supplied by defendant to the complainant or to any other consumer and that a writ of injunction issue to that effect; second, that until the further order of the court, all moneys collected from consumers of gas by defendant in excess of the maximum rates fixed by the ordinance of July 17, 1911, shall be paid over by defendant, on or before the fifth day of the succeeding month, to the Central Trust Company of Illinois, as trustee, who shall give bond for $500,000, and hold and pay over such moneys with interest at three per cent to such persons as the court shall direct; and that a writ of injunction issue without bond, restraining defendant, its officers and agents until the further order of the court, "from retaining, using or disposing" of moneys collected in excess of the ordinance rates, "in any way or manner other than by the payment thereof to the Central Trust Company as trustee, on or before the fifth day of each month."

It is contended by the appellant that the first part of the interlocutory order is erroneous because no threats are alleged to have been made by the appellant, and no facts are set up from which it appears even probable, that appellant will collect more than 80 cents per thousand feet for its gas unless prevented by an injunction; to which the city replies that the issuance of a preliminary injunction is discretionary and that the order granting the same should be af-

firmed, unless it clearly appears that the court below has improperly exercised its discretion.

While it is true, generally speaking, that the matter of granting a preliminary injunction is a matter resting in the sound discretion of the trial court and that appellate courts are averse to any interference with the proper exercise of such discretion (New Ohio Washed Coal Co. v. Coal Belt Ry. Co., 116 Ill. App. 153, 157; West Side Hospital v. Steele, 124 Ill. App. 534, 543), yet the authorities hold that an improper exercise of such discretion is shown if it appears that some established rule of law or principle of equity has been violated. High on Injunctions, 4th Ed., Sec. 1696.

It is a familiar principle of equity, that to warrant a court in granting a preliminary injunction, some fact or facts must be made to appear from which the court can see that unless prevented the acts sought to be enjoined will in all probability be committed to the injury of the complainant. Coquard v. National Linseed Oil Co., 171 Ill. 480, 482; Chicago Telephone Co. v. Northwestern Telephone Co., 199 Ill. 324, 365; 16 A. & E. Ency. of Law, 2nd Ed., 360.

In this case there is no averment in the bill or exhibits which were under consideration at the time of the granting of the injunction, showing that the defendant has threatened or intends to demand or collect more than 80 cents per thousand feet for its gas, and no facts are alleged from which it can be inferred that there is any reasonable probability that the defendant expects or intends so to do. On the contrary, it appears on the face of the bill that ever since August 7, 1911, the defendant "has been and is now charging, exacting, demanding and collecting * * * 80 cents for each 1,000 cubic feet of gas consumed." The statement at one place in the bill that defendant "will charge, demand and collect * * * more than 75 cents and more than 80 cents" is a mere conclusion, unsupported by any fact or circumstance

alleged, and inconsistent with the facts which are elsewhere set forth.

It is also urged that even if the court below committed error as to this part of the order, yet the preliminary injunction can do no harm; but the mere fact that it may do no harm to a defendant to issue an injunction against him *pendente lite* is not a sufficient ground for granting an injunction. Dunne v. Bryan, Ir. R. 7 Eq. 143, 158; Mullen v. Jennings, 9 N. J. Eq. 192, 195.

As to the second part or so-called "impounding feature" of the order appealed from, the record shows that by one clause of this portion of the order the defendant company is peremptorily ordered to pay over monthly to a trustee named in the order, all moneys charged and collected for its gas in excess of the ordinance rates, to be held by such trustee subject to the further order of the court; while by another clause of the same order a writ of injunction is directed to issue against the company, enjoining and restraining it "from retaining, using or disposing of any moneys collected or received by the defendant after the entry of this order * * * in excess of the maximum rates and charges prescribed and fixed in and by the aforesaid ordinance * * * in any way or manner other than by the payment thereof to said Central Trust Company of Illinois, as trustee." It is urged by appellee's counsel that the purpose of this "impounding feature" is merely to provide a practicable method whereby the defendant, for convenience, is temporarily permitted to charge and collect from consumers amounts in excess of the ordinance rates, on condition that such excess shall be turned over to a trustee and held by said trustee until such time as the court shall determine whether the ordinance rates are reasonable. But even if it be conceded that such was the purpose of this feature of the order, it is apparent that it is mandatory in terms

as well as in its operation and effect, and goes beyond the ordinary function of a preliminary injunction, which is merely to maintain or preserve the *status quo*. Such status, as it existed at the time that the bill was filed, was that the gas company, in pursuance of an order then but recently entered before Judge Gibbons, was collecting 80 cents per thousand feet for gas furnished by it to consumers in Chicago, which amount was five cents per thousand feet less than had been collected during the five years preceding under the authority of an ordinance of the City Council, and that by the same order the city had been enjoined from enforcing the ordinance of July 17, 1911, until such time as there could be a legal determination of the question whether the rates fixed by such ordinance were reasonable. Hence the order restraining the gas company from using any money collected pending such determination, in excess of the rates fixed by the new ordinance, otherwise than by turning over the same to a trustee named by the court, was tantamount to a command on the part of the court to pay over all such collections to such trustee. In fact the defendant was in express terms required to do this by another part of the same order, as above stated. Such an order comes clearly within the class known as mandatory interlocutory injunctions.

The rule as to the issuance of a mandatory preliminary injunction is thus stated in High on Injunctions, 4th Ed., Sec. 2: "While a court of equity is always reluctant to grant a mandatory injunction upon an interlocutory application before final hearing, it may do so in an extreme case where the right is clearly established and the invasion of the right results in serious injury."

In Florida East Coast Ry. Co. v. Taylor, et al., 47 Southern Rep. 345, the rule is thus stated: "It is settled by an overwhelming weight of authority that except in rare cases where the right is clear and free

from reasonable doubt, a mandatory injunction commanding the defendant to do some positive act will not be ordered, except upon final hearing, and then only to execute the judgment or decree of the court.''

In Hunt v. Sain, 181 Ill. 372, 378, the court apparently holds that a mandatory injunction will never be ordered except on final hearing; but this was interpreted in City of Rock Island v. Central Union Telephone Co., 132 Ill. App. 248, 259, as stating only the usual rule.

In 22 Cyc. 742, the author of the article on Injunctions says: ''There is no doubt that the court has jurisdiction to issue preliminary mandatory injunctions and it is proper to do so in cases of extreme urgency where the right is clear indeed, and where considerations of the relative inconvenience bear strongly in complainant's favor,'' citing many authorities which amply support the statement quoted.

In view of these authorities thus clearly limiting the power of a court of equity in the issuance of mandatory preliminary injunctions to very rare cases of extreme urgency, where the right is clear indeed and free from reasonable doubt, the obvious question to be determined is whether such an extreme case is made by the bill and exhibits in this case.

In view of the facts that the city employed two experts in succession to assist in its determination of the reasonable rate to be fixed by ordinance; that these experts disagreed in their conclusions; that the report of the first (which was the result of six months' investigation of the properties, books and papers of the defendant) recommended a higher rate than the ordinance prescribes; that the second report was based upon an analysis of the first, with little, if any, independent examination of the facts, and that all these matters are alleged by the city in its bill of complaint, it certainly cannot be said that the case thus presented is so very clear and so free from reasonable doubt as

to come within the class of cases in which the trial court is justified in granting to a complainant in advance of a hearing upon the merits this exceptional and extraordinary process.

No case has been cited by counsel in which a mandatory preliminary injunction has been granted upon facts such as are here alleged. Several cases have been cited in which a public service corporation has sought the aid of a court of equity to enjoin a municipality from enforcing an ordinance similar to the one in this case, in which the court required of the complainant as a condition to the issuance of a preliminary injunction, that the moneys collected in excess of the ordinance rates be deposited to await the final action of the court; but such cases merely follow the well recognized practice of requiring a complainant who is seeking relief from a court of equity to give bond or other security against a wrongful use of injunctive process as a condition to the granting of a preliminary injunction. It is quite a different matter to impose the same sort of conditions upon a defendant before a trial has been had.

These views require us to reverse the interlocutory order appealed from and the same will therefore be reversed. We deem it unnecessary to discuss any of the other propositions advanced by counsel.

*Order reversed.*

Additional opinion filed on petition for rehearing.

PER CURIAM. A rehearing is asked upon the ground that the opinion heretofore filed makes no disposition of an alleged fund which is said to have been impounded under the terms of the order reversed. The record before us is silent as to the existence of any such fund. It is stated for the first time in the petition for a rehearing that such a fund was collected without protest from consumers who relied upon the order impounding the fund thus collected; and it is urged that

this court, under the section of the statute permitting appellate courts, in reversing an interlocutory order, to "direct such proceedings to be had in the court below as the justice of the case may require," ought to enter some order designed to protect such consumers against the possibility that appellant may hereafter make the claim that all such payments were voluntarily made, as was successfully done in Illinois Glass Co. v. Chicago Telephone Co., 234 Ill. 535.

Manifestly, the duty of an Appellate Court is to decide matters that are properly before it for decision. Its province is to review the judgments, orders and decrees of the trial courts. We cannot assume to know without proof, nor are we permitted to take for granted, on the mere statements of counsel, that consumers who have paid their gas bills have done so voluntarily or otherwise; nor how much, if any, of such fund has been paid under protest or without objection; nor whether all or some of such consumers, and if only some, then how many, have so paid in reliance on the ability of the city or the order of the court to protect them. In the absence of such proof we have nothing upon which to base any decision or direction to the court below.

If the theory of the bill of complaint is correct, viz: that the city represents in this case all consumers of gas within the city limits, it would seem to follow that all such consumers are now, and have been since the filing of the bill, contesting the right of the gas company to collect any sum in excess of the ordinance rates. Whether such a contest is equivalent to a protest at the time of payment, is a question not raised or discussed in the briefs of counsel in this case, and cannot be first raised in a petition for rehearing.

In Fry v. Radzinski, 219 Ill. 526, an interlocutory injunction order was reversed and it was contended that the Appellate Court should have assessed dam-

ages under the statute. In reply to this contention, the court said (p. 541):

"It was never the intention of the legislature that the Appellate Court, which is a reviewing court, should take testimony for the purpose of assessing damages upon the dissolution of an injunction. When the Appellate Court dissolves the injunction, it is the duty of the Circuit Court to hear evidence, and assess the damages. * * * As the case still remains in the Circuit Court, notwithstanding the appeal to the Appellate Court, the order of reversal entered by the Appellate Court, merely has the effect of wiping out the order granting the injunction." See also, Garrity v. Chicago, etc. R. Co., 22 Ill. App. 404.

Following the rule so announced, we see no reason why the Circuit Court may not take evidence concerning the facts alleged in the petition for rehearing, and make such order in the premises as will adequately protect the rights of all parties.

The petition for rehearing is therefore denied.