Cleaning and Dyeing Plant Owners Association of Chicago et al., Appellees, v. Sterling Cleaners and Dyers, Inc., et al., Appellants.

Gen. No. 37,916.

Opinion filed December 19, 1934. Rehearing denied January 9, 1935.

IRVING BREAKSTONE, of Chicago, for appellants.

LAVIN & JAFFE, of Chicago, for appellees; GEORGE S. LAVIN, WILLIAM JAFFE and IRA S. KOLB, of Chicago, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an interlocutory appeal by certain defendants from a temporary injunctional order entered by the chancellor upon the sworn bill of complaint of the plaintiffs, and upon notice to the defendants. The part of the order complained of is:

"It is Therefore Ordered that all parties hereto, both plaintiffs and defendants, and each of them, and their respective officers, agents, attorneys, solicitors or employees, and all associations, firms or persons assisting or aiding them, or any of them and their officers, agents, attorneys, solicitors and employees absolutely desist and refrain, until the further order of this court, of and from:

"(a) Selling, offering for sale, rendering or offering to render, cleaning and dyeing services for men's and women's garments at a price less than sixty-nine (69¢) cents per garment for cash and carry and less than eighty-five (85¢) cents per garment called for and delivered.

"(b)   Advertising in any publication, newspaper, periodical, by signs, on wagons, signs on windows, signs on trucks, through the radio, verbal solicitation, through the use of circulars, hand bills, billboards, or from making known in any other manner that the cleaning and dyeing services as above set forth in paragraph (a) will be rendered at prices below those designated in paragraph (a) hereof.''

The order then recites that it is entered without prejudice to the rights of any of the parties to move for its modification at any time prior to the final termination of the cause.

The bill of complaint in the instant case was filed by the Cleaning and Dyeing Plant Owners Association of Chicago, a corporation not for profit, and 92 associate members as plaintiffs and against 22 named defendants.

The complaint sets forth the nature of the several plants owned by the plaintiffs, the amount invested, which is in excess of $12,000,000, and that each of the plaintiffs operates a cleaning and dyeing plant in Chicago; that the industry in Chicago and vicinity employs in excess of 7,500 workers; that the total business done in Chicago and the surrounding territory, in the aggregate, amounts to $15,000,000, and that the plaintiffs herein did in excess of $11,000,000 during the past year, and that the total business done by the defendants during the same year was approximately $1,000,000; that each of the plaintiffs has been in the cleaning and dyeing business in Chicago for a period of from 3 to 40 years, and has for many years last past advertised his or its services, quality and price throughout the community; that such advertising has been conducted through newspapers, circulars, letters, handbills, signs, billboards, radio, etc., and that the plaintiffs have expended large sums of money annually, and have established good will.

The bill then sets up the history of the industry from 1921 to 1928 and recites that prevailing prices for dry cleaning during that period were $1.75 for men's suits and $2 and upwards for women's dresses; that because of ruinous competition and price wars, the cleaning business steadily decreased and the cleaning industry suffered losses; that since the depression, investigations were made by the plant owners, including some of the plaintiffs and defendants, and their books submitted and examined, so that a fair and reasonable price could be determined; that fair prices were adopted by the greater part of the industry; that when it looked most hopeful that fair dealings would be restored, the defendants began selling below cost and selling cleaning and dyeing services at a price of 15 cents per garment, the purpose being to entice the customers of the plaintiffs and thereby injure and destroy plaintiffs' business; that the plaintiffs were forced to either meet the low cost competition of the defendants or shut down their respective plants, and for a period were forced to offer a cleaning and dyeing service for a price below cost; that defendants retaliated by dropping to a still lower price; that plaintiffs sustained losses and made efforts to arbitrate, and although a price of 85 cents per garment was agreed upon between the plaintiffs and the defendants, the defendants soon reverted to cutthroat competition and unfair practices.

The bill then recites the economic condition of the years after 1931 and the activities of the legislative bodies of the several States, as well as the Congress of the United States, to relieve unemployment and to rehabilitate industry; that on or about November 8, 1933, the plaintiffs and the defendants presented a code of fair competition in the dyeing and cleaning trade, which code became effective November 20, 1933; that the minimum price schedule was announced as

being a reasonable price, and one which would permit the owners of the cleaning and dyeing establishments to make a fair return on their investment.

The bill then sets out the various types of labor employed by the plaintiffs, with minimum rates of pay, based upon 40 hours per week, ranging from $14 for beginners to $45 per week for fancy goods spotters, and that union help is employed; that there are contracts between the plaintiffs and the Inside Help Union, and also the Drivers Union, which provide for a minimum wage scale, and based upon a retail price of $1 per garment.

It is also charged in the complaint that the defendants engaged in a conspiracy to:

"(a) Engage in destructive and ruinous trade competition, with the purpose and effect of unsettling or destroying the cleaning and dyeing industry in Chicago and its environs and prevent recovery for any of the plaintiffs;

"(b) Embarrass, damage, injure or destroy the plaintiffs and the plaintiff association;

"(c) Inaugurate and maintain a system of price cutting and underselling, without regard to cost or profit, so as to compel the plaintiffs to operate their respective businesses at a loss;

"(d) Deprive the plaintiffs of their customers and prospective customers, and to injure their good will, business and investments and their thousands of employees;

"(e) Induce other persons, firms or corporations engaged in the cleaning and dyeing business to participate with them in their price cutting and below cost selling activities and join such conspiracy;

"(f) To cause the plaintiffs irreparable loss, damage, injury and expense in connection with the contracts entered into by the plaintiffs for labor under their respective contracts, forfeiture of leases, loss

of salesmen, foremen, and other experienced and capable personnel, and other items of irreparable loss, damage and injury, including the destruction of the good will of the plaintiffs' businesses.''

It is also charged that in pursuance of such conspiracy, the defendants commenced a course of ''sweat shop'' production and a program of deceptive ''bait'' advertising, and caused their drivers and agents to solicit the customers of the various plaintiffs; that one of the defendants through the owner of all the capital stock of the company, stated that he was engaging in low cost competition and unfair trade practices for the purpose of forcing the plaintiffs to buy out his plant at an exorbitant price; that the conspiracy resulted in a strike and lockout early in September, 1934, and on September 12, 1934, there was addressed and delivered to the plaintiff association, a letter signed by the three defendants and others, and the letter recognized the demoralized state of the cleaning business resulting from the strike and lockout in the cleaning industry and the necessity of settling the controversy, and suggested a price of 59 cents per garment, cash and carry, and 75 cents per garment, called for and delivered; that a committee of plaintiffs met with the defendants and it was suggested that a price of 69 cents, cash and carry, and 85 cents, delivered, be adopted; that some of the defendants were willing to do so, but the great majority remained steadfast in their position on the price heretofore charged by them; that after the termination of the strike on September 19, 1934, the defendants resumed their low cost selling bait advertising and other unfair trade practices.

The complaint further charges that the actual cost to the plant owners of cleaning a lady's dress or a man's suit in the Chicago area at this time ranges from 70 to 80 cents, if the plant operates at capacity;

that the cost of wholesale cleaning and dyeing service
is as follows:

Ladies' dresses cleaned and finished.45¢ per garment
Men's suits cleaned and spotted.....30¢ per garment
Men's suits cleaned, spotted and
    pressed .......................45¢ per garment
Men's felt hats....................40¢ per garment

The relief prayed for in the bill of complaint is
that the defendants be enjoined and restrained, tem-
porarily and permanently, from engaging in any con-
spiracy or combination for the purpose of damaging
or injuring plaintiffs or causing loss of customers to
the plaintiffs and loss of wages to their employees,
and from doing any acts in furtherance thereof, from
engaging in destructive or ruinous trade or competi-
tion; from interfering with the business of the plain-
tiffs; from inaugurating or maintaining a system of
price cutting; from in any way creating a price war
or selling below cost, and from advertising or announc-
ing service to the public below cost price in any manner
or form.

In the discussion of the question called to the atten-
tion of the court by the plaintiffs, it is urged that,
upon an interlocutory appeal, the sole question to be
determined is, whether the averments of the complain-
ants show a probable cause of action, and, upon motion
for a preliminary injunction, the chancellor may right-
fully consider the balance of convenience and the rela-
tive equities of the parties, and enter an injunction in
order to preserve the *status quo* until a full hearing
may be had on the merits.

It is true, generally speaking, that the granting of
a temporary injunction is a matter resting in the sound
discretion of the chancellor, that appellate courts hes-
itate to interfere with the proper exercise of such dis-
cretion, and this rule is supported by the general trend
of opinions of courts of appeal. The authorities hold,

however, that an improper exercise of such discretion is subject to review if the court has violated some established rule of law or principle of equity. *City of Chicago v. People's Gas Light & Coke Co.*, 170 Ill. App. 98.

When we consider the order in the instant case, the court directs the defendants to desist from selling or rendering cleaning and dyeing service for less than the prices specified in the order, or in other words, in order to render service, the defendants are obliged to sell their service at the prices provided for in the order. The effect of this injunction order is mandatory in character. The rule is that caution should be exercised in the issuance of a mandatory injunction based upon the sworn bill of complaint alone. The plaintiff must make out a clear case, free from doubt or dispute, as a basis for its issuance. Where, as in the instant case, complete relief may be afforded the complainant upon a final hearing, upon the facts stated in the bill, the plaintiffs are not entitled to a temporary injunction which is mandatory in character. It appears from the facts stated in the bill that the cleaning and pressing service to be rendered should be at a retail price of from 70 to 80 cents per garment for a lady's dress or a man's suit requiring such attention; still it is stated in the bill that at a wholesale price service can be rendered for a lady's garment cleaned and finished at 45 cents, and men's suits at from 30 to 45 cents.

The thought then is that the range of prices for this service may be questioned by the defendants as to reasonableness, and they have a right to be heard. This court will not at this time determine the reasonable prices for such service or the profit that may be had by the parties, but this should be passed upon by the court at a final hearing.

The prayer for relief is that prices shall be fixed and relief granted so that the defendants may not sell

below cost. In order that the chancellor may be advised, evidence should be offered upon a final hearing, and the merits determined as to the reasonableness of the prices to be charged for the service, and whether the defendants are selling below cost for the purpose of destroying the business of the plaintiffs. The injunction, in effect, is a final determination of the prices to be charged, in the absence of evidence to establish the reasonableness of the prices provided for in the order.

What we have said in regard to the mandatory character of the order entered by the court in fixing the prices for cleaning and dyeing services that appear in the temporary injunction applies with equal force to the paragraph contained in the same order that prohibits the defendants from the use of advertising mediums in an effort to sell the service at prices other than set forth in the injunctional order.

An interesting case is *City of Chicago v. People's Gas Light & Coke Co., supra.* The bill for injunction was filed by the City against the Gas Company, but before an answer by the defendants, the chancellor, upon motion of the City, entered a temporary injunction restraining the officers and agents of the defendants from collecting more than 80 cents per thousand for gas furnished by the defendants, and ordering that the excess over the rate fixed by an ordinance passed by the City should be paid over to the trustee named in the order. The court in that opinion said:

"While it is true, generally speaking, that the matter of granting a preliminary injunction is a matter resting in the sound discretion of the trial court and that appellate courts are averse to any interference with the proper exercise of such discretion (*New Ohio Washed Coal Co. v. Coal Belt Ry. Co.,* 116 Ill. App. 153, 157; *West Side Hospital v. Steele,* 124 Ill. App. 534, 543), yet the authorities hold that an improper

exercise of such discretion is shown if it appears that some established rule of law or principle of equity has been violated. High on Injunctions, 4th Ed., Sec. 1696.

"It is a familiar principle of equity, that to warrant a court in granting a preliminary injunction, some fact or facts must be made to appear from which the court can see that unless prevented the acts sought to be enjoined will in all probability be committed to the injury of the complainant. *Coquard v. National Linseed Oil Co.*, 171 Ill. 480, 482; *Chicago Telephone Co. v. Northwestern Telephone Co.*, 199 Ill. 324, 365; 16 A. & E. Ency. of Law, 2nd Ed., 360."

The court in its opinion announces the rule by which the court should be guided in the issuance of a mandatory preliminary injunction, and says:

"The rule as to the issuance of a mandatory preliminary injunction is thus stated in High on Injunctions, 4th Ed., Sec. 2: 'While a court of equity is always reluctant to grant a mandatory injunction upon an interlocutory application before final hearing, it may do so in an extreme case where the right is clearly established and the invasion of the right results in serious injury.'

"In *Florida East Coast Ry. Co. v. Taylor et al.*, 47 Southern Rep. 345, the rule is thus stated: 'It is settled by an overwhelming weight of authority that except in rare cases where the right is clear and free from reasonable doubt, a mandatory injunction commanding the defendant to do some positive act will not be ordered, except upon final hearing, and then only to execute the judgment or decree of the court.'

"In *Hunt v. Sain*, 181 Ill. 372, 378, the court apparently holds that a mandatory injunction will never be ordered except on final hearing; but this was interpreted in *City of Rock Island v. Central Union Telephone Co.*, 132 Ill. App. 248, 259, as stating only the usual rule.

"In 22 Cyc 742, the author of the article on Injunctions says: 'There is no doubt that the court has jurisdiction to issue preliminary mandatory injunctions and it is proper to do so in cases of extreme urgency where the right is clear indeed, and where considerations of the relative inconvenience bear strongly in complainant's favor,' citing many authorities which amply support the statement quoted.

"In view of these authorities thus clearly limiting the power of a court of equity in the issuance of mandatory preliminary injunctions to very rare cases of extreme urgency, where the right is clear indeed and free from reasonable doubt, the obvious question to be determined is whether such an extreme case is made by the bill and exhibits in this case."

The Appellate Court in an abstract opinion in the case of *Paxton v. Fabry,* 200 Ill. App. 104, held that an order restraining the use of a building for an ordinary drug store and physician's office in the city during the pendency of the suit, in violation of restrictive covenants, is in the nature of a mandatory injunction granting the relief sought by the bill in advance of a hearing on the merits, and should not be granted.

Then again, this court in the case of *Levy v. Rosen,* 258 Ill. App. 262, upon the question of the issuance of a mandatory injunction upon a preliminary hearing, held it is improper on a motion for an interlocutory injunction to grant an order for a mandatory injunction, which is a final order without any hearing on the merits and which grants the complainants all the relief they pray for in their bill, and changes the *status quo* of the parties.

There is no question that a party complaining in a chancery proceeding is entitled to the protection of the court and to the issuance of a temporary injunction to restrain a defendant from an effort to destroy the business of the said parties by unfair practices, when

this purpose is apparent and the facts are clearly stated in the bill of complaint. It is not, however, the purpose of courts to interfere with the conduct of business where fair competition is involved. If by such fair competition a party engaged in the business may suffer a loss, he is not entitled to an order restraining his competitor in the conduct of his business.

The effect of the order in the instant case disposes of the question of price for services rendered, and really disposes of the question of merits before a final hearing, the result of which is to grant the plaintiffs the relief sought by their bill. The rule in equity is that the issuance of a temporary injunction, if the allegations of the bill justify it, is for the purpose of maintaining the *status quo* until the merits can be determined upon a final hearing. The court by its order disposed of the question of the merits of the controversy, and thereby changed the status of the parties.

Other questions have been called to our attention, but they are not important in view of the conclusions we have reached and stated above.

For the reasons indicated, we believe the court erred in the entry of the temporary injunction, and therefore the order will be reversed.

*Order reversed.*

WILSON and HALL, JJ., concur.