OLIVER P. HUNT

*v.*

JOSEPH MILTON SAIN *et al.*

*Opinion filed October 19, 1899.*

1. DRAINAGE—*when ditch is within provisions of Drainage act of 1889.* A ditch constructed in a continuous line across the lands of adjoining owners by mutual license and agreement, whether it is an entirely new ditch or an old one re-opened, is within the provision of section 1 of the Drainage act of 1889 (Laws of 1889, p. 116,) which declares such drains to be for the mutual benefit of all the lands interested therein, and the provisions of such act apply thereto.

2. INJUNCTIONS—*when mandatory injunction may issue.* One whose right to the maintenance of a ditch and to the unobstructed flow of water through it constitutes a perpetual easement is entitled to a mandatory injunction directing the removal of an obstruction.

3. EASEMENTS—*easement to maintain ditch is not extinguished by an unexecuted parol agreement.* An easement to maintain a ditch is not extinguished by an unexecuted parol agreement between owners of the dominant and servient tenements, giving the latter the right to fill up the ditch.

4. EVIDENCE—*burden of showing abandonment of easement is on party asserting it.* The burden of proof to show the abandonment of an easement rests upon the party asserting it.

5. LICENSE—*when parol license to construct ditch is irrevocable.* A parol license for the construction of a drain is irrevocable when the licensee has constructed tile drains upon his land on the faith of the license granted to drain through the ditch.

WRIT OF ERROR to the Circuit Court of Douglas county; the Hon. EDWARD P. VAIL, Judge, presiding.

This is a bill in chancery, filed by the defendants in error on September 30, 1896, against the plaintiff in error, to restrain the latter from continuing the obstruction of an open ditch on his land, alleged to form a continuous line of ditch across the several lands of defendants in error and plaintiff in error, and alleged to have been constructed by the mutual license, consent, or agreement of the owners of these adjoining lands.

A highway runs north and south on the west side of section 22 in township 15, north, etc., in Bowdre township in Douglas county. The highway runs between section 22 on the east side thereof, and section 21 on the west side thereof, in said township. The bill alleges, that the defendant in error, Sain, owned and has owned since May 4, 1884, the north-west quarter of the north-west quarter of said section 22; that defendant, George Hunt, owns and has owned since November 29, 1884, the south-west quarter of the north-west quarter of section 22; that the defendant in error, Morris Bennett, owns and has owned since March, 1892, the north-east quarter of said section 21; that the commissioners of Bowdre township have the supervision and control of said highway; and that plaintiff in error, Oliver P. Hunt, is the owner of the east half of the north-west quarter of said section 22. Formerly, one Peck owned the west half of the north-east quarter of said section 22, but, at the time the bill was filed, one Dressback seems to have been the owner of the west half of said north-east quarter. The ditch in question appears to have been constructed with the consent of the owner or owners of the north-east quarter of section 21, the north-west quarter of the north-west quarter of section 22, the east half of the north-west quarter of section 22, the west half of the north-east quarter of section 22, and the south-east quarter of section 15.

The bill alleges that, for more than twenty years before January 1, 1896, there was constructed by the mutual license, consent, and agreement of the owners of the adjoining lands above described an open ditch, so as to make a continuous line upon, over, and across the said lands. The ditch in question began at a point on the west line of the north-west quarter of section 22, and ran east therefrom between the north-west quarter of the north-west quarter and the south-west quarter of said north-west quarter of said section 22, across the east half of the north-west quarter now owned by the plaintiff in error, between the north forty and the south forty thereof, and eastward across a portion of the west half of the north-east quarter of said section 22 through a natural draw to the main outlet, running north-eastwardly to what was called Scattering Fork.

The bill further alleges that, for more than twenty years before January 1, 1896, by the agreement and consent and acquiescence of said land owners, the waters from the north-east quarter of section 21, and from said highway, and from the west half of the north-west quarter of said section 22, have drained into and flowed through that part of said ditch, which crosses the east half of the north-west quarter of said section 22, owned by the plaintiff in error; that said waters so flowed through said ditch upon the lands of plaintiff in error by his agreement, consent, and acquiescence, after the construction of the ditch jointly by said land owners. The bill further avers that, in April, 1896, plaintiff in error obstructed and filled up said ditch upon the east half of the north-west quarter of said section 22, by throwing into the same earth and brush and other material; that, thereby, the waters draining through the lands of the defendants in error and through said highway, were dammed up and forced back, so as to be prevented from flowing away from the lands of defendants in error and from the highway; that, thereby, defendants in error were deprived of

the right of the flow of water through said ditch upon the land of plaintiff in error; and that, thereby, their crops have been injured, and their tile drains stopped, and their lands rendered wet and swampy.

The bill further alleges that, by reason of the filling up of said ditch, the damages will be irreparable, continuous, recurring, and lasting; that they are not susceptible of reparation at law, and that the aid of equity is necessary to prevent a multiplicity of suits.

The answer of the plaintiff in error denied, that the ditch in question was made more than twenty years before the filing of the bill, or that it was made with the mutual license, consent, or agreement of the defendants in error, or any, or either of them. The answer sets up that, in 1877, one George Scott was the owner of the north-west quarter of the north-west quarter of said section 22, and that, at that time, it was agreed between him and plaintiff in error, that Scott might dig this ditch, running east and west, with the understanding that, if it did not work properly and carry off the water, plaintiff in error, through whose land it was being constructed, might fill it up; that the ditch did not, and never did, work satisfactorily to plaintiff in error; that the same had for some time been practically abandoned, and allowed to fill up; that Scott told plaintiff in error, that the said ditch did not do him (Scott) any good, and that plaintiff in error could fill the same up, if he wanted to do so. The answer denies that the highway commissioners ever exercised any control over said ditch. The answer admits, that the plaintiff in error told his tenant to plow over and fill up the said ditch. Replication was filed to the answer.

The case was referred to a master in chancery to take testimony; the master took the testimony, and made a report thereon. Upon hearing, the court rendered a decree, finding the facts in the bill to be true, and granting the relief therein prayed. The present writ of error is

sued out for the purpose of reviewing the decree so entered by the circuit court.

ROBERT E. HAMILL, (PALMER, SHUTT, HAMILL & LESTER, and T. D. MINTURN, of counsel,) for plaintiff in error.

ECKHART & MOORE, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is claimed on the part of the plaintiff in error, that the court below erred in applying the act of 1889 in relation to drains, approved June 4, 1889, to the issues and evidence in this case. Section 1 of said act of June 4, 1889, provides: "That whenever any ditch or drain, either open or covered, has been heretofore or shall be hereafter constructed by mutual license, consent, or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over, or across the lands of said several owners, * * * then such drains shall be held to be a drain for the mutual benefit of all the lands so interested therein." (Laws of Ill. 1889, p. 116).

The proof shows that at some time between 1868 and 1871, by an arrangement between one Scott, who owned the north-west quarter of the north-west quarter of section 22, now owned by the defendant in error, Sain; and one Jones, who then owned the east half of the north-west quarter, now owned by the plaintiff in error; and one Peck, who owned the west half of the north-east quarter of said section 22, a ditch or drain was constructed running east and west substantially in the line of the ditch described in the statement preceding this opinion. The testimony leaves it somewhat in doubt, whether the ditch then constructed ran directly east across the premises of Jones, now owned by the plaintiff in error, or whether it ran a little north of an east and west line.

The evidence, however, is clear that, in 1877, Scott, who then owned the north-west quarter of the north-west quarter of section 22, now owned by the defendant in error, Sain, cut a ditch straight across the premises of the plaintiff in error, to connect with the natural draw above referred to, with the consent and by the permission of the plaintiff in error. In cutting the ditch in 1877, Scott varied somewhat from the line of the old ditch dug between 1868 and 1871, but he proceeded substantially upon the same line, upon which the old ditch had been run. Whether the ditch dug by Scott in 1877 was an entirely new ditch, or merely the opening of the old ditch, it was a ditch constructed by the mutual license, consent, and agreement of the owners of the adjoining lands, so as to make a continuous line upon, over, or across their lands. We are, therefore, of the opinion that the act of 1889 is applicable to the issues made by the pleadings and to the proofs introduced in the case.

*Second*—It is claimed on the part of the plaintiff in error, that the court below erred in issuing an injunction, which was mandatory, and not merely preventive, in its character. The decree was, that the plaintiff in error should be enjoined from continuing the obstruction of the ditch on the premises of the plaintiff in error, and from permitting it to remain filled up and obstructed, and that the plaintiff in error should "remove said filling and obstruction of said ditch, so as to restore to said complainants the right to the free flow of the waters through said ditch."

Undoubtedly, the general rule is, that an injunction is a preventive remedy merely, and cannot be so framed as to command the party to undo what he has done. (*Wangelin* v. *Goe*, 50 Ill. 459). But it has been said that a court of chancery, by framing the order for injunction in an indirect form, can compel a defendant to restore things to their former condition, and, so, effectuate the same results, as would be obtained by ordering a positive

act to be done. (Kerr on Injunction,—3d Eng. ed.—p. 48).
"While the jurisdiction of equity by way of mandatory
injunction is rarely exercised, and while its existence has
even been questioned, it is nevertheless too firmly estab-
lished to admit of doubt." (High on Injunctions, sec. 2).
A mandatory injunction, commanding the plaintiff to do
some positive act, will not be ordered except upon final
hearing, and then only to execute the judgment or decree
of the court. A mandatory injunction will be issued in
cases of obstruction to easements or rights of like nature;
and an obstruction will be ordered to be removed, as part
of the means of restraining the defendant from interrupt-
ing the enjoyment of the said easement or right. (*Rogers
Locomotive and Machine Works* v. *Erie Railway Co.* 5 C. E.
Green,—N. J. Eq.—379). In *Earl* v. *DeHart*, 12 N. J. Eq. 280,
an injunction was prayed against the defendants to en-
join and restrain them from permitting the channel of a
water-course to remain filled up and obstructed, and from
further filling up and obstructing the same; and it was
there held, that the complainant was entitled to have the
obstruction removed, and that a court of chancery could
exercise the power to abate nuisances, as well as to pre-
vent the erection of nuisances, in clear cases.

In *Corning* v. *Troy Iron and Nail Factory*, 40 N. Y. 191,
it was held, that equity will interpose by a mandatory
injunction to compel the restoration of running water to
its natural channel, when wrongfully diverted therefrom,
at the suit of the party, whose lands include either the
whole or a part of said channel; and that the grounds
for equitable interposition in such case are two-fold:
First, inadequacy of any legal remedy to secure the party
in the enjoyment of his right to have the water flow in
its natural channel; and second, to prevent a multiplicity
of suits for damages, accruing from the daily and con-
tinuous wrongful diversion of the stream.

In *Rothery* v. *New York Rubber Co.* 90 N. Y. 30, it was
held that, where one wrongfully erects and maintains a

dam upon his lands, which sets back the water of the
stream upon lands of a neighbor, a judgment is proper,
directing the lowering of the dam to such a height, as
will abate the nuisance.

High, in his work on Injunctions, (sec. 804,) says: "A
mandatory injunction may be granted to compel the res-
toration of water to its natural channel, which has been
wrongfully diverted therefrom." And, in such case, it
makes no difference whether the channel dammed up, or
from which the water is diverted, is a natural water-
course or an artificial ditch. (*Earl* v. *DeHart, supra*).

In *Wessels* v. *Colebank*, 174 Ill. 618, we held that the
Drainage act of 1889 above referred to operates to con-
vert all parol licenses for ditches and drains, therein pro-
vided for, into perpetual easements, where such licenses
have not been revoked within the time limited by the
act, that is to say, within one year from the taking effect
of the act; and that the act has the effect to make a drain,
constructed in the manner therein indicated, an encum-
brance upon the lands through which it runs; and that
the right to have the ditch maintained, and to have the
water flow through it unobstructed, is a permanent one,
binding upon the owners of the land and their grantees.
The case of *Wessels* v. *Colebank, supra*, has held that, under
the act of 1889, a twenty years' user of a ditch across the
land of another is not necessary to the acquirement of
the easement.

In the case at bar, the ditch in question was con-
structed across the premises of the plaintiff in error by
the mutual license, consent, and agreement of the owners
of the adjoining lands, whether such owners were the
former proprietors, Scott, Jones, and Peck, or Scott and
plaintiff in error alone. Hence, the right of the defend-
ants in error to have the ditch maintained and to have
the water flow through it unobstructed, was, by the act,
converted into a perpetual easement, if there was no
revocation by the plaintiff in error of the license to make

the ditch, which was given to Scott in 1877. Therefore, the defendants in error, having such perpetual easement, were entitled, under the authorities already quoted, to invoke the interposition of equity by a mandatory injunction ordering the removal of the obstruction. The granting of a mandatory injunction of this character was approved of in *Ribordy* v. *Murray*, 177 Ill. 134.

*Third*—It is admitted by the plaintiff in error, that a parol license was granted to Scott in 1877 to construct the ditch in question, or to open the old ditch formerly constructed across the land of plaintiff in error. Section 4 of the act of 1889 provides, that the right to revoke such parol license must be exercised within one year from the time of the taking effect of the act, and, if not thus exercised, and if suit is not brought within said year to enforce the revocation, the party, granting the license, shall be forever barred from thereafter revoking the same.

The evidence does not show, that there was ever at any time any formal revocation by the plaintiff in error of the license, granted to Scott in 1877. Plaintiff in error says, that he permitted Scott to dig the ditch upon condition that, if it did not fulfill the object for which it was constructed, plaintiff in error should have the right to fill it up; and that it did not fulfill such object; and that Scott told the plaintiff in error that the latter could fill it up, if he chose to do so. But no act was done by the plaintiff in error, indicating that he intended to exercise the alleged privilege of filling up the ditch. On the contrary, the evidence shows that, in 1882 or 1883, one or two years before defendant in error, Sain, purchased the property from Scott, or became the owner thereof through Scott, the ditch was repaired, and opened anew, by the owners of the north-east quarter of section 21, lying west of the highway and opposite the westward opening of the ditch. This repairing and opening anew in 1882 or 1883 was done, if not with the affirmative consent of the plaintiff in error, at least with his acquiescence. Sec-

tion 3 of the act of 1889 provides that, whenever drains are constructed in accordance with the act, none of the parties interested therein shall, without the consent of all the parties, fill the same up or obstruct the flow of water therein; and that the license, consent, or agreement of the parties, mentioned in the act, may be inferred from the acquiescence of the parties in the construction of the drain.

If there was a parol agreement between Scott and plaintiff in error, authorizing the latter to revoke the license given to Scott, it was an unexecuted parol agreement, and was never acted upon, so far as is shown by this record. A parol agreement between the owners of the dominant and servient tenements will only operate to extinguish the easement, when such agreement is acted upon; and an unexecuted parol agreement will have no such effect. (10 Am. & Eng. Ency. of Law,—2d ed.—p. 432; Jones on Easements, sec. 847).

The proof does not show clearly an abandonment of the easement by Scott. The burden of proof to show such abandonment is upon the party claiming its existence; and such party must establish the fact by clear and unequivocal evidence. (Jones on Easements, sec. 850).

The evidence is clear, that plaintiff in error took no steps to fill up the ditch until April, 1896, long after the act of 1889 had gone into effect, and long after the period, granted by that act for the revocation of the previous license, had elapsed. The failure to execute, by the filling up of the ditch, the parol agreement, which is alleged to have been made between the plaintiff in error and Scott, warrants the conclusion, that the condition, upon which the agreement was based, did not arise. Nor are the acts of the plaintiff in error, in permitting the ditch to be repaired and improved several years after its construction by Scott, consistent with the claim, that he revoked the parol license given to Scott. The parol agreement, if made, that he might fill up the ditch, was

not valid, inasmuch as it was not filled up until April, 1896, after the defendant in error, Sain, had become the owner of the land formerly owned by Scott, and after the land owners to the west of plaintiff in error, including the highway commissioners, had, for a number of years, exercised the privilege of draining into the ditch. The proof tends to show that the defendant in error, Sain, was allowed by the plaintiff in error to construct tile drains upon his land upon the faith of the license granted by the plaintiff in error to drain, through the ditch in question. "A parol license is irrevocable, when the conduct of the licensor has been such that the assertion of the legal title would operate as a fraud upon the licensee." (Jones on Easements, sec. 76).

The decree of the circuit court is affirmed.

*Decree affirmed.*