ALBERT DORMAN

*v.*

MARTIN DROLL.

*Opinion filed April 17, 1905.*

1. DRAINAGE—*owner of land may drain water through natural depression to limit of his land.* A land owner may drain water from his land through a natural depression to the limit of his land in any manner he may elect, whether by open ditches or tile drains.

2. SAME—*effect of act of 1889, relating to drains built by mutual consent.* Under the act of 1889, (Laws of 1889, p. 116,) if owners of adjoining lands have connected drainage ditches or tiles the drain is held to be for the mutual benefit of the parties, and after the expiration of one year from the passage of the act the easement of drainage becomes perpetual and neither party can interfere with the drain without the other's consent.

3. SAME—*vested right to perpetual easement of drainage is not affected by unexecuted parol agreement.* A vested right to a perpetual easement of drainage through a drain constructed by mutual consent cannot be forfeited or affected by an unexecuted parol agreement by the owner of the dominant estate to construct an independent drain for his land.

APPEAL from the Circuit Court of Vermilion county; the Hon. M. W. THOMPSON, Judge, presiding.

In May, 1894, appellee exhibited his bill in chancery in the Vermilion circuit court against appellant, praying for a mandatory injunction against the latter requiring him to connect a certain tile drain leading from the farm of appellee to that of appellant and to desist from further disconnecting the same. The bill alleges that appellee is the owner of the south half of the north-west quarter of section 36, in township 23, north, range 14, west, in said Vermilion county, and that appellant is the owner of the south half of the same section; that appellee's land is the dominant or superior estate and appellant's the servient estate in the matter of drainage; that from the land of appellee onto the land of appellant ran a natural depression in a southerly direction, which carried the waters that fell and accumulated upon the lands of appellee; that in 1884 there was upon appellee's land a certain pond, comprising about three acres, which had its natural outlet upon and toward the land of appellant, and also had an outlet through a ditch along said depression that either by nature or by construction had for a long time previously existed; that in that year appellee constructed upon his own land a six-inch tile drain leading from said pond to the south line of appellee's land, and that in 1885 appellant extended a six-inch tile drain northward from the southerly portion of his land and connected the same with the tile drain on appellee's land; that since the construction of the said tile drain the ditch that theretofore existed and that had carried the waters from appellee's land to and over appellant's land was farmed over and obliterated and has become insufficient to carry the water upon the surface; that after the construction of said tile drain by appellee and the connection with it by appellant the lands of appellee were well drained by said tile ditches, and so continued until in the year 1903, when appellant, without the knowledge or consent of appellee and

contrary to the statute, wrongfully took out one or more tile and filled up and stopped up the said tile ditch at a point on the land of appellant from near the south line of appellee's land, so that the waters naturally falling and accumulating upon appellee's land could not flow through said tile ditch; that by reason thereof appellee's lands were partially submerged and water thereby caused to stand upon the land of appellee, and a large portion thereof was rendered unfit for cultivation and the crops thereon destroyed; that he has requested appellant to remove said obstruction and desist from further interfering with, the beneficial use of said tile; that appellant has refused to do so; that the damages are such as cannot readily be ascertainable at law, and that they are, of such a nature that they are irreparable, continuous, recurring and lasting.

Appellant answered the bill, admitting the ownership of the lands alleged in the bill; admitting that there is a natural depression in the western portion of the land of appellee into which the water flowing onto said land naturally flows; denying that all of said water flowing to such natural depression finds its natural outlet along said depression onto the lands of appellant; alleging that said water remains upon the land of appellee and forms a pond there which has no outlet, and that only a small portion of the overflow of such water naturally comes onto the lands of appellant. Appellant admits that appellee constructed the tile drain upon his lands and that appellant also constructed a tile drain upon his lands, but denies that he connected his tile with appellee's tile, and alleges that he stopped his said line of tile within a rod of appellee's line. There are many other things alleged in the answer in reference to other lines of tile which are not material to the consideration of this case. Appellant further alleges in his answer that in 1892 appellee, without his consent and without any agreement between the parties, attached his tile to the tile of appellant, and that as soon as appellant learned of such connection he disconnected the

same and notified appellee thereof; that he and appellee then entered into an agreement, by which appellee was not to connect any of his tile with the tile of appellant but appellee was to construct another tile across the land of appellant, which privilege was granted by appellant to appellee without cost to him, but that instead of doing so appellee constructed an eight-inch tile from east to west across his own land and near the southern line thereof, and across the said natural depression, so as to drain the same in a direction away from the lands of appellant; that after that time appellee, without the knowledge of appellant, again connected the said tile, and appellant, upon learning of the same, again disconnected it and notified appellee not to again connect the same; denies that appellee is entitled to the relief prayed, or to any relief.

The cause was referred to a master to take the proof, which was done, and upon a hearing the chancellor found the issues for the appellee and decreed the relief prayed, and from that decree appellant prosecutes this appeal.

BUCKINGHAM & DYSERT, and SCHNEIDER & SCHNEIDER, for appellant.

O. M JONES, and KERR & LINDLEY, for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

The evidence in this case is somewhat extensive for the character of the case, and is conflicting, but upon the material matters we are satisfied that a clear preponderance is in favor of appellee and supports the decree. It is clearly established that the land of appellant is the servient estate; that for many years before 1884 there was upon appellee's land, leading from the pond mentioned in the statement, a natural depression, and that along that natural depression was a ditch, —whether artificial or natural is not disclosed by the evidence,—which had, for as long as the witnesses know about

the land, carried whatever overflow there was from the pond and what water fell upon the lands along the depression from the land of appellee to the land of appellant; that that depression, or ditch, as some call it, continued and extended on into the land of appellant and became more pronounced, and before proceeding far into the lands of appellant became a good-sized and well-defined ditch; that the pond on appellee's land covered about three acres; that it had a rim, and that the lowest point was· at the southerly end, opening out toward the land of appellant. Under such circumstances appellee had the right, under the law of drainage as found in the common law, to carry the waters thus accumulating upon his land in the course of natural drainage, to the limit of his land in any manner he might elect, and for that purpose could make open or tile ditches·and accelerate the flow of the water, so that he could discharge the whole of the water that fell in said pond and in said depression, or naturally drained therein upon his land, at his south line within the shortest time, limited only by the possibilities of drainage. Having such right, appellee constructed a six-inch tile drain leading from said pond to his south line, and there sank a half barrel, into which he made the outlet for his tile. The fall was sufficient, and the effect of such construction was to speedily throw large quantities of water upon appellee's land at the line between him and appellant, and to cause the same to spread out over and injuriously affect the land of appellant for farming.

The evidence shows that after appellee did construct this tile line in the year 1884, and before appellant constructed his tile line and connected the two together, appellee could farm the land that had theretofore been in a pond. We think the evidence also preponderates in showing that appellant realized the necessity of in some manner taking care of this water thus lawfully being discharged upon him, and to that end visited the home of appellee and there talked over the matter with him, and offered and proposed to construct a tile

drain upon his own land and connect the same with appellee's tile, so that there might be sub-surface drainage and appellant's land rendered susceptible of better farming and more beneficial use. And the evidence shows that appellant employed the same person (one Fred Haarms) who had constructed appellee's tile line to construct a line for appellant upon his land and connect the same with appellee's line, and that said Haarms did so construct a tile line for appellant and did connect the same with appellee's tile, removing the half barrel that appellee had had for his outlet. It is true that the appellant denies that he authorized or directed Haarms to connect the tile, but Haarms testified that he did direct him to do so and that he made the connection according to the direction, and in this statement Haarms is corroborated by a number of witnesses who heard the conversation leading to the employment between Haarms and appellant, which occurred at appellee's house and in the presence of appellee's family.

In April, 1903, appellee learned that appellant had disconnected the tile, and as appellee and appellant both then lived in the town or village of Rankin, as appellant was passing appellee's house or home the latter hailed him and inquired of him if he had disconnected the tile. Appellant replied that he had, and that he was not obliged to take the water of appellee, and was not going to take it any longer. Appellee asked appellant why he hired Fred Haarms to lay his tile and connect his (appellant's) tile with appellee's that ran down the open ditch and to then cut it off. Appellant replied that when he hired Haarms he did not understand how the waters worked; that at that time he thought the waters nearer the mouth of the tile were drained first, but that he had since found out that the upper lands drained first, and he did not want any more of appellee's water. Appellant denies this conversation, but appellee testified to it, and is corroborated by Charles Walker, who was present and heard it, and we think there is no escape from the conclusion

that it did take place, and we are also impressed with the view that it stated the real facts in the matter. The record shows that in 1895 appellant disconnected the tile and appellee had a talk with him about it, and that they became heated, and appellee afterwards connected his tile again. It is also claimed that appellee, in 1903, when he learned that the tile had been disconnected by appellant, had a verbal agreement with appellant that he, appellee, would construct an independent tile line across the north-west corner of appellant's land, cross the road into other lands of appellee lying west of appellant, and thus have a different course of drainage.

Appellee grounds his right of action upon an act of the legislature which was passed and in force in 1889, regulating drains and ditches made by mutual license. (Laws of 1889, p. 116; Hurd's Stat. 1903, chap. 42, pars. 187, 189, p. 772, which are sections 1 and 3 of the act.) Paragraph 187 (sec. 1) provides: "That whenever any ditch or drain, either open or covered, has been heretofore or shall be hereafter constructed by mutual license, consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over or across the lands of said several owners, or where the owner or owners of adjoining or adjacent lands shall hereafter by mutual license, consent or agreement, be permitted to connect a drain with another already so constructed, or where the owner or owners of the lower lands has heretofore or shall hereafter connect a drain to a drain constructed by the owner or owners of the upper lands, then such drains shall be held to be a drain for the mutual benefit of all the lands so interested therein." It is under the last clause or provision of the above section that appellee claims his right of relief,—or, to state it more specifically, the provision that "where the owner or owners of the lower lands has heretofore or shall hereafter connect a drain to a drain, constructed by the owner or owners of the upper lands, then such drains shall be held to be a drain for the mutual benefit of all the

lands so interested therein." Paragraph 189 (sec. 3) of the act provides: "Whenever drains have been or shall be constructed in accordance with this act none of the parties interested therein shall, without the consent of all the parties, fill the same up or in any manner interfere with the same so as to obstruct the flow of water therein; and the license, consent or agreement of the parties herein mentioned, need not be in writing but shall be as valid and binding if in parol as if in writing, and may be inferred from the acquiescence of the parties in the construction of such drain." Paragraph 190 (sec. 4) of the act provides for the revocation of any parol license given before the passage of the act, and concludes as follows: "*Provided,* such right be exercised and suit commenced to enforce the same within one year from the time this act takes effect, but if not thus exercised and suit brought within one year he shall be forever barred from thereafter revoking such license."

Appellant states in his evidence that in the year 1890 he disconnected this tile, and in that statement we are satisfied he is mistaken. After the construction of this particular tile line appellant constructed two other tile lines lying east of the one in question, leading up toward the land of appellee, and tile lines from appellee's lands were also connected with those two tile lines. Appellant testifies that he did not know that the appellee had or was connected with the tile line in question until he found it out in 1890, and that about that time he also found out that he was connected with the two other tile lines east of the one in question, and that he disconnected all three of them at the same time when he did so find it out. The evidence, as we think, clearly establishes that the two tile lines east of the one in question were not constructed until 1893, and that when appellant fixed the year 1890 as the time he disconnected all three of the tile lines he is in error as to the time. There is no pretense that he ever brought any suit or took any legal steps to revoke appellee's right to drain into his tile, other than going and breaking

the connection, which was not a compliance with the provision of the statute authorizing such revocation.

Counsel for appellant say that the provision of the statute above quoted and relied upon in this case is a harsh provision, and ought not to be enforced except where the equities are very great. We are unable to adopt that view of the statute, but are rather inclined to the view that it has done much to settle what was previously a source of dispute among farmers, and whether the act be harsh or not, the remedy is not with the courts. The right here was clearly established, and the claim that appellant is or was released from his duty by the supposed verbal agreement between him and appellee in 1903, when appellee agreed to construct an independent tile line across the lands of appellant, cannot be allowed to prevail, because the evidence shows that that matter went no farther than a preliminary line was staked out and shortly thereafter a bill was filed for the relief now sought. If effect is to be given to this statute, appellee had, by virtue of it and the acts of appellant, become vested with a perpetual easement,—a right to have his waters flow through the tiles of appellant in the manner they were doing at the time the act went into force, and a mere unexecuted parol agreement is not sufficient upon which to predicate the forfeiture of so valuable a right. (*Hunt* v. *Sain,* 181 Ill. 372; *Wessels* v. *Colebank,* 174 id. 618.) The facts authorizing the relief prayed and granted are fully established by the evidence, and in this case the duty of the court is plain. *Ribordy* v. *Murray,* 177 Ill. 134; *Hunt* v. *Sain, supra.*

Appellee, in order to fairly present this case, was compelled to make an additional abstract, and our examination of it shows that appellant in the original abstract omitted material portions of the evidence. The cost of the additional abstract will be taxed to appellant.

The decree of the circuit court is affirmed.

*Decree affirmed.*