(No. 11231.—Decree affirmed.)

ALEX. GIRARD et al. Appellants, vs. THE LEHIGH STONE COMPANY, Appellee.

*Opinion filed October 23, 1917—Rehearing denied Dec. 5, 1917.*

1. EASEMENTS—*easement cannot be created by parol.* An easement or other incorporeal hereditament in lands cannot be created by parol but only by grant or by prescription which presumes a grant, and at law a parol license is revocable though a consideration has been paid or expenditures have been made on the faith of the agreement.

2. SAME—*equity may, to prevent fraud, restrain the exercise of right to revoke license.* Courts of equity will interfere to restrain the exercise of a legal right to revoke a license on the ground of preventing fraud and will construe the license as an agreement to give the right.

3. INJUNCTION—*to sustain an injunction complainant must suffer injury by violation of rights.* To authorize an injunction there should not only be a clear violation of the rights of the complainant, but it should also appear clearly that there is a substantial injury by reason of such violation.

4. EQUITY—*all of the parties joining in suit must be entitled to recover.* In equity, as in law, all the parties who join in a suit must be entitled to recover, and if any one or more of the complainants fail to maintain a case against the defendant, the others, in order to maintain their suit, must amend the bill by striking out the names of such co-complainants.

APPEAL from the Circuit Court of Kankakee county; the Hon. A. W. DESELM, Judge, presiding.

A. L. GRANGER, (W. R. HUNTER, of counsel,) for appellants.

J. BERT. MILLER, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Alex. Girard, Elmer N. Taylor, Philip C. Voigt, Fred A. Bevan, Dick Witthoeft and Charles Sauerman filed a bill in chancery against appellee, the Lehigh Stone Com-

pany, alleging that it is the owner of the southeast quarter of section 1, township 30, north, range 10, east of the third principal meridian, in Kankakee county, upon which it operates a stone quarry; that complainants are the separate owners of six different tracts of farm land in sections 34, 35 and 36, in township 31, north, range 10, east of the third principal meridian, in said county, which tracts adjoin each other and lie immediately north and northwest of the land of appellee; that the natural course of drainage of appellee's land is westerly and southwesterly thereof, and that the right of way of the New York Central Railroad Company is located on the north side of this land; that there is a ridge along the said right of way which forms a dividing line between two different watersheds, appellee's land being in the south watershed and complainants' lands in the north watershed; that in quarrying stone appellee has excavated its said land to a depth of eighty feet or more, and that large quantities of water accumulate in said quarry from ordinary rainfall and seepage occasioned by said excavation; that appellee has pumped, and is pumping, the water from said quarry through a pipe onto the southeast quarter of the northeast quarter of said section 1, owned by appellee and lying on the north side of said railroad right of way and north of the dividing line of said watershed, and after being deposited upon said forty-acre tract the said water flows onto and across the farm lands of complainants, making the same wet and unsuitable for cultivation and damaging complainants in their crops and in the enjoyment of their said lands; that they notified appellee to desist from sending its water across the lands of complainants, but that it ignored such notice and refused to discontinue the pumping of the water as aforesaid. Complainants pray, among other things, that appellee be forever enjoined from pumping and sending the water from its quarry across said divide and onto the lands of complainants. The appellee answered, denying all of the material

allegations thereof except as to the ownership of the land, and averred, in substance, that it has the right to drain the water of said quarry through the lands of Girard, Taylor and Voigt by an agreement entered into between it and the said owners and given for a valuable consideration, and denies that any of the complainants are entitled to the relief prayed. The circuit court of said county found the issues in favor of appellee and against complainants and dismissed their bill for want of equity. Complainants Girard, Taylor and Voigt prosecute this appeal. The other complainants have abided by the decree of the court.

The evidence discloses that appellee's stone quarry is operated on the northeast quarter of the southeast quarter of section 1, and is about seventy-five or eighty feet deep, about four hundred feet wide north and south and about seven hundred feet long east and west, and is on the south side of the railroad. A public highway runs north and south on the east side of said section, thence west on the north end of said section to the center of the section, and thence north. In 1907 one Caron owned the land now owned by appellant Girard, and he permitted appellee to construct a ten-inch tile through his land to the ditch in the highway for the purpose of conveying the quarry water to the ditch in question, which runs northwest across the lands of Caron, Taylor, Voigt, Witthoeft, Bevan, Sauerman and Burkhart. After that was done appellee pumped the water from the quarry across the right of way of the railroad through two three-inch iron pipes, by means of three pumps, underground into said tile. The ditch that runs through the appellants' lands northwesterly follows the natural course of the watershed on those lands and was used by the land owners for the purpose of draining their lands and was apparently constructed by them for that purpose. The natural drainage of the water of the quarry appears to be to the south and west, but since 1907 the ditch across appellants' lands has been by their permission

used by appellee for the purpose of discharging and carrying away its quarry water up to the bringing of this suit, December 26, 1913.

W. R. Sanborn, one of the owners of the quarry, testified that prior to the arrangement with Caron to pump the quarry water across his land, appellant Taylor, who was then a tenant on the Caron farm, told witness that it was necessary to pump water for the cattle on the Caron farm, and that it would be a good thing if they arranged some system of putting the quarry water into the ditch that existed across said farm, and that at that time appellee was making arrangements to drain the quarry water westerly along the right of way of the railroad. Taylor denied making any such suggestions. Appellee continued to operate its quarry and pump its water across the Caron farm into said ditch under its said construction of 1907 until about November, 1909, when the ten-inch drain tile was replaced with an eight-inch iron pipe from the quarry to a concrete box just north of the railroad and from said box by a fifteen-inch vitrified tile running across appellee's land and into the drainage ditch across said farm, which had been cleaned out and deepened for the purpose of better drainage. Sanborn testified that this new construction was brought about by appellant Girard in 1908, who had then become the owner and possessor of the Caron land; that Girard wanted appellee to carry the quarry water in a closed tile clear across his land; that after witness had employed a surveyor to survey and take levels on the ditch he convinced Girard that an open ditch was better than a closed tile, and that Girard and he agreed upon the construction of the ditch anew by deepening and widening it, and that under that agreement they did so reconstruct it up to the land of appellant Taylor at a cost of $81 to appellee in addition to work personally done by witness; that when that part of the ditch was reconstructed by said agreement, witness and appellants Taylor and Voigt and other land

owners entered into an agreement by which witness sur-
veyed and deepened and widened the said ditch from the
northwesterly point of the new construction of the ditch
on Girard's land through the lands of Taylor, Voigt, Burk-
hart, Witthoeft, Bevan and Sauerman, at a cost to appellee
altogether for said new construction of $1125, said land
owners, including appellants, also doing voluntary work in
aid thereof and without charge where the ditch crossed
their lands.  Sanborn testified that this new construction
was made under said agreement and with the express un-
derstanding upon the part of appellee and of all the appel-
lants that in consideration of the work and the expenditures
by appellee on the ditch and of the benefits to accrue to
the said land owners, including appellants, appellee was to
have the privilege of pumping and discharging its quarry
water into said ditch and across appellants' lands.  Appel-
lants in their testimony all denied that they made any agree-
ment that appellee might discharge its quarry water into
said ditch, and further testified that the agreement with
appellee by them was that appellee might drain its surface
water off of another tract of land owned by appellee east
of Girard's land, and that drainage for this latter tract was
the special benefit, and the only one, that appellee contem-
plated getting by its expenditures on said ditch.  Sanborn
was corroborated in his testimony by the fact that appellee
did not own the tract of land east of Girard's in 1908,
when the said work of reconstruction was done on said
ditch, but only had an option thereon for its purchase, which
did not expire until March, 1909.  He is also further cor-
roborated by the fact that appellee was pumping its quarry
water into said ditch during 1908 and had been doing so
since 1907, and has continued to do so up to the bringing
of this suit, with the knowledge of appellants and without
any objection on their part.  There was other corroborative
testimony of Sanborn's testimony, and other witnesses cor-
roborated the testimony of appellants, and it was simply

a question of fact as to which party's testimony was true. The court was warranted in finding the issues of fact for appellee, and we see no reason for reaching a different conclusion in that regard.

The agreement by which appellee claims an easement across appellants' land was a verbal agreement. It is well settled that an easement or other incorporeal hereditament in lands cannot be created by parol but only by grant, or by prescription, which presumes a grant. (*Lake Erie and Western Railroad Co.* v. *Whitham,* 155 Ill. 514.) At law a parol license is revocable though a consideration has been paid or expenditures have been made on the faith of the agreement. (*St. Louis Nat. Stock Yards* v. *Wiggins Ferry Co.* 112 Ill. 384; *Tanner* v. *Volentine,* 75 id. 624.) Courts of equity, however, will interfere to restrain the exercise of a legal right to revoke a license on the ground of preventing fraud and will construe the license as an agreement to give the right. (Jones on Easements, sec. 76; *Hunt* v. *Sain,* 181 Ill. 372; *Kamphouse* v. *Gaffner,* 73 id. 453.) Appellants went into the circuit court by bill in equity to enjoin the doing of the very thing they had agreed appellee should do, according to the finding of the circuit court. Appellee had expended large sums of money on the faith of their agreement, and it would amount to a fraud on appellee to permit appellants to thus undo their agreement. They are asking equity but at the same time are not offering to do anything to make appellee whole on its expenditures.

There is another reason why appellants ought not to be permitted to maintain their bill. There is no evidence in this record that the original complainants Witthoeft, Bevan and Sauerman have sustained any damages whatever to their lands or to their crops by reason of the pumping of the quarry water into said ditch. Witthoeft testified positively that his land had not been damaged by any water coming from the Lehigh Stone Company. Appellant Taylor testified that the pumping of the water into the ditch

has been to him "a damage by keeping the land cold and wet and has resulted in damage to my crops." He merely stated the foregoing conclusion without stating the facts to support such conclusion. He testified the ditch across his land is twenty feet wide at the top, probably eight feet at the bottom, and four feet deep "part of the way." There is no testimony in the record that the ditch ever overflowed on his land, and it is hardly conceivable that it could do so by reason of the water pumped from the quarry. There are no facts given to show any substantial damage to his land. Voigt testified that the ditch runs through a meadow and pasture of his; that it didn't bother much as long as the land was in meadow and pasture; that if it had been under cultivation it would have bothered him. He concludes by stating that the land is still in meadow and pasture where the ditch runs. This is the only evidence or attempt to prove damages to his land by reason of the quarry water. The sole evidence of damage to appellant Girard's land is his testimony that the pumped water keeps his land cold, and that he lost about four or five acres of crops he "could have raised there this year just on account of that water overflowing." On cross-examination he testified that the ditch would be all right if it were kept clean, but that it filled up. He helped to make the new ditch voluntarily, and it is clear from his testimony that with a little effort and a small outlay he could have prevented his damage. The record does not show that he asked appellee to clean out the ditch or to help do so.

To authorize an injunction there should not only be a clear and palpable violation of the rights of the complainants, but it should also appear clearly that there is a substantial injury by reason of such violation. *Springer* v. *Walters*, 139 Ill. 419; *Dunn* v. *Youmans*, 224 id. 34.

The rule is recognized in equity, as in law, that all the parties who join in a suit must be entitled to recover or none can. If any one or more of the complainants in a

suit in equity fail to maintain a case against the defendant, the remainder of the parties, in order to maintain their suit against the defendant, must by leave of court amend their bill by striking out the names of such co-complainants who had no cause of action. *Lovelace* v. *Hutchinson*, 17 So. Rep. (Ala.) 623; Story's Eq. Pl. sec. 525c.

The decree of the circuit court is right, and it is therefore affirmed.

*Decree affirmed.*