(No. 34823.—

PETE ANASTAPLO, Admr., *et al.,* Appellants, *vs.* NORA RADFORD *et al.,* Appellees.

*Opinion filed September 18, 1958.*

A. D. Morgan, of Herrin, and Frank E. Trobaugh, of West Frankfort, (Stephen E. Brondos, of West Frankfort, of counsel,) for appellants.

D. L. Duty, of Marion, for appellees.

Mr. Justice Davis delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Williamson County denying injunctive relief and dismissing for want of equity a complaint which sought to establish the right of plaintiff to maintain a sewer line on the lands of defendant. After testifying before the master and during the pendency of further proceedings, Theodore Anastaplo, plaintiff, and Miles Radford, defendant, died. The substituted parties to this appeal are the personal representative and heirs of Anastaplo, as plaintiffs, and the heirs of Radford, as defendants. Since the decree determines the ultimate right of the plaintiffs to a perpetual easement, a freehold is involved and we have jurisdiction on direct appeal. *Kling* v. *Ghilarducci,* 3 Ill.2d 454; *Liberty Nat. Bank* v. *Lux,* 378 Ill. 329; *Burke* v. *Kleiman,* 355 Ill. 390.

The complaint alleged that plaintiff purchased two tracts of land from defendant, the first upon which he built a residence, and the second upon which he constructed the Hi Point restaurant and motel; that plaintiff and defendant entered into a written agreement whereby plaintiff was given the right to connect to and permanently use a sewer line serving the homes of both parties, which extended

across vacant lands of the defendant located north and west of plaintiff's residence. The complaint further alleged that at the time the plaintiff purchased the land upon which the motel was later built, and as part of the consideration, defendant orally agreed that plaintiff should have the right to construct a sewer line from that tract over defendant's vacant land, lying north of that property and west of plaintiff's residence, to connect with the existing sewer line at the rear of the plaintiff's residence; that plaintiff constructed the motel and built the sewer line from the motel property across the lands of the defendant to connect with the existing line and, with defendant's consent, used it for several years; that the original intention of the parties was that a written agreement would be signed granting this right, but such agreement was never executed; that in June of 1949, after giving notice to plaintiff to remove all of the sewerage facilities from his premises, defendant destroyed and obstructed the sewer, causing sewage to spread over adjacent premises; that plaintiff requested defendant to open the sewer line and restore it, but defendant refused to do so or to permit plaintiff to repair it; and that as a result of defendant's acts, plaintiff was compelled to close his motel and thereby suffered substantial damage. The plaintiff prayed for specific performance of the verbal agreement granting the right to construct and maintain the sewer; for injunctive relief to compel defendant to restore the sewer line and henceforth restrain him from interfering with it; and for damages.

The answer denied all of the material allegations of the complaint and set up by way of special defenses the parol-evidence rule and the Statute of Frauds. (Ill. Rev. Stat. 1953, chap. 59, pars. 1 and 2.) Plaintiff's reply questioned the pertinency of the special defenses and re-alleged certain portions of the complaint. The court denied defendant's motion for judgment on the pleadings, as well as plaintiff's motion to withdraw the reply to the special defenses and

substitute in lieu thereof a motion to strike them. The cause was referred to a master to take proofs and make findings. After taking testimony and receiving documentary evidence, the master found that the equities were with the defendant but recommended that the court order that a sewer be constructed by plaintiff across the lands of defendant at plaintiff's expense in accordance with plans submitted by an engineer who had testified as a witness for plaintiff. No findings or recommendations were made relative to damages. The court disregarded the master's recommendations as to construction of a sewer, overruled exceptions to the master's report, and dismissed the complaint for want of equity.

A threshold question is presented by defendant's contention that this appeal should be dismissed because it was not perfected within the time allowed by the statute, which provides, *inter alia:* "No appeal may be taken from a trial court to the Supreme or Appellate Court after the expiration of 60 days from the entry of the order, decree, judgment or other determination complained of, * * *." (Ill. Rev. Stat. 1955, chap. 110, par. 76.) The record shows that the decree in question was filed on December 21, 1957, and that notice of appeal was given and filed on February 10, 1958, 51 days later, and within the period prescribed by statute. However, defendants state that the decree recites that a hearing was held on December 3, 1957, and that the judge's minutes show pronouncement of the decision on that date, 68 days before the notice of appeal was filed. They contend that December 3, rather than December 21, is the date from which the 60-day period must be computed. We have often observed the difference between judgments at law and decrees in chancery relative to their effective dates. While judgments at law are operative when pronounced, a decree in chancery is final and effective only when it is reduced to writing, approved by the chancellor and filed for record. (*Freeport Motor Casualty Co.* v,

*Tharp,* 406 Ill. 295; *Miller* v. *Miller,* 376 Ill. 628; *Moore* v. *Shook,* 276 Ill. 47; *Horn* v. *Horn,* 234 Ill. 268.) While the decision of the chancellor in this case was apparently announced on December 3, the written decree was not approved or filed until December 21. The decree was entered when it was reduced to writing, approved by the chancellor and filed for record. Thus, the notice of appeal was served and filed within the time allowed.

We must next determine whether there was an agreement between Miles Radford and Theodore Anastaplo whereby Anastaplo was given the right to build a sewer line from the motel property over Radford's land to connect with the sewer at the rear of his residence.

The evidence establishes that in 1941 Radford was the owner of a 20-acre tract of land south of the city of Carterville, bounded on the east by the Carterville road and on the south by State route 13. This land was without public sewer facilities and drained generally in a northwesterly direction. A large ditch or creek ran through this property in a northeasterly and southwesterly direction, generally north of the improved properties hereafter mentioned. Radford platted a part of this property into lots bounded by the Carterville road on the east and north of its intersection with State route 13. He then had a residence and store north of the intersection and lots designated 1, 2, 3, 4, and 5 were platted further north along Carterville road. These lots appear from the plat to be about 70 feet wide and 183½ feet in depth. On February 26, 1952, Theodore Anastaplo and wife purchased lot 3 from Radford and constructed a residence thereon. The plat shows that the south line of this lot is about 200 feet north of State route 13. At this time a sewer line of six-inch tile extended from the Radford properties in a northerly direction and ended in a ditch at the rear of lot 3 on vacant lands of Radford just west of the platted strip. This open ditch extended downhill to the north and connected with

the large ditch or creek heretofore mentioned. By a written contract dated March 11, 1942, Radford and Anastaplo agreed that "the Sewer draining from lot (2) two, from the basement of Miles Radford, to and across lot (3) three, known as the property of Theodore Anastaplo, and thence running to and across the property of Miles Radford, known as lot (4) four; all to be known as a permanent and natural drain, and the above mentioned drain to be in permanent operation without the interference of either of the above mentioned parties," and that each property owner would maintain his own portion of the sewer. Pursuant to this agreement, Anastaplo connected to this sewer line from a septic tank which he built at the rear of his residence. The line was also used by residences north and south of Anastaplo.

On January 2, 1945, Anastaplo purchased from Radford another parcel of land 70 feet wide and 200 feet deep bounded on the south by State route 13 and on the north by a line approximately even with the south boundary of his residential property. A narrow strip of land on which a filling station had been constructed was east of this land. The east line of the filling station premises corresponded with the west line of the lots which had been platted on the Carterville road. After Anastaplo purchased the second tract, Radford continued to own the vacant unplatted land which was north of this tract and west of the Anastaplo residence. Anastaplo testified that at the time he purchased the second lot, he advised Radford that he intended to build a restaurant and motel; that Radford then agreed that he should have the right to build a six-inch tile sewer line over his land and extending in a north and easterly direction to connect with the sewer line serving the residences on Carterville road; that Radford then and later told Anastaplo that he would give him a written agreement to that effect, but after the sewer had been built, Radford

stated that Anastaplo already had the sewer and needed no written agreement.

Anastaplo improved the second tract with a two-story concrete block building, used as a restaurant and living quarters, and added several motel units between the years 1946 and 1950. In 1946 he built the tile sewer over the Radford land and extended it to the north and east to connect with the existing sewer which he found in such poor condition that he also laid new tile therein. The owners of other residences connected to this tile. Anastaplo testified that he built this sewer of six-inch tile, laid at least three feet in the ground with provision for connection by other users and in accordance with Radford's direction. Two septic tanks were built on the motel property which were connected to the new sewer, the first in 1946 and the second in 1950. Anastaplo stated that the total cost of the improvements on the motel property was $30,000 to $35,000; that he operated the business on the premises from 1946 to 1952; and that for about three years he enjoyed a net profit of $4,000 to $5,000 per year.

On June 2, 1949, Miles Radford served the following written notice on Anastaplo: "I Miles Radford hereby give you notice on the date shown above that you must remove all of your personal belonging from my premise which includes water lines and sewerage. If this is not done at once I will take other means to have your property remove from mine." About midnight a few days later, there was an explosion on the north extension of the sewer behind the Anastaplo residence, which destroyed a portion of it and the adjacent water line. Anastaplo and his son testified that the following year a post and stakes were driven into the sewer line at a point on the east extension and that the ditch where the drain tile ended was filled with a sack and dirt, which acts were attributed to Clydell Radford, son of Miles; and that prior to the serving of the notice

and the above occurrences, Radford had not complained about the use of the sewer. They further testified that as a result of the destruction and stoppage of the sewer, water backed up and spread over their property and Radford's; that they requested Radford to allow them to repair the sewer and use it, but he refused; that as a result of conditions prevailing after the stoppage, a nuisance charge was filed against them by the State's Attorney; and the public authorities obtained an injunction against them in June of 1951; and that they were advised that they could not use the motel property unless they were able to have the septic tanks drain into a sewer. It is undisputed that the motel had been closed and out of operation since 1952.

Anastaplo hired a sanitary engineer to design plans for a complete sewage disposal system and requested that Radford allow him an easement over his land to the north of the motel property. The engineer testified that the State authorities approved his plan but that Radford refused him permission to go across the land, though he apparently had been allowed to set stakes to show the proposed line. Efforts to secure permission from the State to cross the State highway to the south were likewise unavailing. Anastaplo stated that Radford demanded $1,400 for the right to restore sewer service and the further sum of $800 per year.

Miles Radford denied that he had given Anastaplo permission to build a six-inch tile sewer line across his property, but admitted that he knew Anastaplo was building it and that he saw it when it was being constructed. By way of explanation, he stated that the only drainage contemplated in his conversations with Anastaplo was that from refrigerator boxes in the restaurant and that he had never agreed that septic tanks should be connected to the tile. He professed a complete lack of knowledge concerning the explosions and obstructions to the sewer, but admitted that he had served the written demand that the sewer facilities be removed prior to those events. His son, Clydell,

also denied that he had ever damaged or obstructed the sewer in any way. Some testimony was given on behalf of defendant as to the unsanitary conditions prevailing while the sewer was in operation, but most of this evidence appears to relate to the period after the sewer was damaged in 1949. However, a witness by the name of Sager, who operated a motel on property just west of and adjoining that of Anastaplo, testified that the Anastaplo motel was operated in an unsanitary manner from the start because the septic tanks were inadequate and improperly constructed, but admitted on cross-examination that the conditions were worse after the stoppage of the sewer line.

We believe that the evidence clearly supports the existence of an agreement that the plaintiff could construct a sewer line over defendant's property. In reaching this conclusion we acknowledge that such agreement must be definite, certain and unequivocal in its terms and must be established so convincingly that it will leave no reasonable doubt in the mind of the court, (*Williams* v. *Corcoran,* 346 Ill. 105; *Stephens* v. *Collison,* 313 Ill. 365,) and that we will not disturb the findings of the master, when approved by the chancellor, unless they are manifestly against the weight of the evidence. (*Schmitt* v. *Heinz,* 5 Ill.2d 372; *Chambers* v. *Appel,* 392 Ill. 294.) However, it is our duty to weigh and carefully consider the evidence in such cases and if the findings of the master and chancellor are manifestly against the weight of the evidence, we should not hesitate to reverse. (*Manias* v. *Yeck,* 11 Ill.2d 512.) It is clear to us from the undisputed evidence, as well as from surrounding facts and circumstances, that defendant not only permitted construction of the sewer but granted the right to maintain it in perpetuity. Defendant knew when the property was purchased that plaintiff proposed to build and operate a motel thereon and that sewerage facilities were a necessity. While the property conveyed was in itself large enough to permit the construction of

septic tanks within the area, both parties knew that overflow outlets from such tanks were necessary and that public sewer facilities were not available. The only apparent direction which the necessary outlets could take was across the vacant lands of the defendant to the north. Indeed, a tile drain extending in that direction was already in use as an outlet from the septic tanks at the residences of both plaintiff and defendant. It was inevitable that plaintiff should desire to connect with this facility. The only other feasible plan would have been to extend a line north from the motel premises over defendant's property, and a connection to the existing line would probably have been less objectionable from defendant's viewpoint.

It is undisputed that the sewer was built in the place and in the manner in which plaintiff claimed he was given the right to build it. Defendant admits that he observed it while it was being constructed and offered no objection. It was built in 1946 before any of the motel facilities were placed in operation; regular six-inch sewer tile was used, the same size as that in the existing sewer which served the residential septic tanks. The size of the tile renders Radford's statement that he only gave permission for the construction of a drain from plaintiff's refrigerator boxes unreasonable and unworthy of belief.

It is also undisputed that the sewer line, when constructed, was connected with the first septic tank at the motel and that it was in use and operation for a period of at least two years before Radford demanded its removal. While Radford and his son both denied damaging or obstructing the sewer, it is significant that the events related by plaintiff occurred shortly after receipt of Radford's notice that if the facilities were not removed at once, he would take "other means" to have them removed.

Counsel for defendants emphasized the fact that the deed from Radford to Anastaplo, conveying the motel property, contained no provision for the easement claimed.

From this they argue that there was no such agreement. This argument is not convincing when considered against the background of the prior dealings between the parties. There was no such provision in the deed to the residence property, yet Radford and Anastaplo two weeks later provided for the maintenance of sewerage facilities by separate written agreement. This lends support to Anastaplo's testimony that, at the time he purchased the motel property, Radford agreed to give him a written contract for the contemplated sewer just as he had on the earlier occasion. In view of this prior experience it would not be unusual for Anastaplo to rely on Radford's verbal assurances to later deliver a written easement.

Counsel for defendants suggest that the alleged verbal agreement is not sufficiently clear, definite and unequivocal in its terms. They contend that Anastaplo's testimony concerning the verbal agreement is vague and does not specify the location of the sewer, the manner in which it was to be constructed or the duration of the easement. The short answer to this argument is that if there was anything indefinite about the agreement, the parties, by their subsequent conduct, made it definite. Anastaplo located the sewer where Radford told him to put it and built it according to instructions. Radford saw it constructed and made no objection. The matter of duration presents no problem. According to Anastaplo, Radford agreed to furnish the same type of writing as that executed with respect to the residences. That contract provided that the sewer would be a permanent drain and that neither of the parties should ever interfere with its operation. Surely this contemplated a perpetual easement.

Having found that a contract in fact existed, the next question presented is the effect of the Statute of Frauds. We conclude that it can have no application here. The statute is never available as a defense where there has been sufficient performance by one party in reliance upon the

agreement. Thus an oral promise to convey land will be specifically enforced in equity, notwithstanding the Statute of Frauds, where the promisee has taken possession of the property, made valuable improvements and furnished consideration for the conveyance. (*Manias* v. *Yeck*, 11 Ill.2d 512; *David* v. *Schiltz*, 415 Ill. 545; *Harlan* v. *Harlan*, 273 Ill. 155.) The same rule applies to an oral agreement granting a right of way where the agreement is made for a valuable consideration followed by possession and use. As stated in *Ashelford* v. *Willis*, 194 Ill. 492, 502: "While at law, in order to constitute a valid conveyance of real estate or any interest in land, it must be by deed having a seal and attended with certain formalities, yet in equity a good and indefeasible title may be conveyed without any writing whatever. The rights of the parties depend upon the character and extent of performance and the effect upon the donee by allowing repudiation. Practically all the writers on equity jurisprudence are agreed that * * * even contracts not in writing affecting or concerning an interest in land, are recognized in equity, if they have been so far performed that to permit a party to repudiate them would of itself be a fraud,—and this court is committed to that doctrine." Also see: *Wessel* v. *Eilenberger*, 2 Ill.2d 522.

The foregoing equitable principles apply to the facts in the case at bar. The payment of the purchase price for the land in question was sufficient consideration to support the contemporaneous agreement to grant the easement for the sewer. The plaintiff, in reliance thereon, went upon the servient property and, at his own expense, dug the ditch and laid the tile. The drain was connected to the valuable improvements erected by him on the property purchased from defendant. Thereafter it was used continuously for the purpose intended for at least two years. Under these circumstances it would be fraud to permit the defendant or his successors to repudiate the agreement by

invoking the Statute of Frauds. A court of equity will protect the right to an easement just as it will any other valuable interest in real estate where the facts call for that protection. (*Trapp* v. *Gordon,* 366 Ill. 102; *Ashelford* v. *Willis,* 194 Ill. 492.) The recognition and protection by courts of equity of executed parol contracts concerning land constitute no violation of or impingement upon the parol-evidence rule. That rule has no application to situations such as presented in the case at bar, since there is no question of varying or modifying the terms of a written instrument or agreement. The agreement here sought to be enforced is admittedly entirely verbal.

We have also recognized that courts of equity may protect by injunction the right to and use of an easement against interference, encroachment or obstruction where the plaintiff has no adequate remedy at law. (*Girard* v. *Lehigh Stone Co.* 280 Ill. 479, 484; *Hunt* v. *Sain,* 181 Ill. 372, 377-380; also see 17A Am. Jur. par. 183, pages 788, 789.) The relief afforded need not be confined to preventive measures, but may be extended to compel affirmative action by the issuance of a mandatory injunction when necessary. Where a defendant has obstructed a drain, established by way of easement, a mandatory injunction compelling removal of the obstruction is proper as part of the means of restraining the defendant from interrupting the enjoyment of the easement. (*Hunt* v. *Sain,* 181 Ill. 372, 377, 378.) Plaintiff had no adequate remedy at law and was entitled to an injunction restraining defendants from interfering with his use and enjoyment of the sewer, and compelling them to remove the obstructions thereto and to restore the sewer to its former condition.

In view of his conclusion, the master made no findings or recommendations whatever relative to damages. The chancellor concurred in the master's recommendation that the relief sought be denied and entered such a decree. The question of damages, if any, sustained by plaintiff by rea-

540

son of the obstruction of the sewer was not considered by the trial court and consequently cannot be reviewed on this appeal.

The decree of the circuit court of Williamson County is reversed and the cause is remanded to that court with directions to enter a decree granting specific performance of the agreement and the issuance of an injunction, both preventive and mandatory, as prayed in the complaint, and with the further direction that the cause be again referred to the master to take proof upon the question of damages. Upon such hearing the parties shall have full right to introduce such evidence upon that question as may be proper, and when such proofs have been taken, the master shall report his findings, conclusions and recommendations to the court, subject to the further order of the court upon that question alone.

*Reversed and remanded, with directions.*