**Daniel Boone Woolen Mills and Rock Island Garment Company, Appellees, v. Marcus S. Laedeke, alias Mike Laedeke, et al., Appellants.**

**Gen. No. 7,417.**

1. CONTEMPT—*hearing as to contempt committed in presence of court.* In cases of direct criminal contempt committed in the presence of the court, no hearing or trial is contemplated and none can be allowed because no court except that against which the contempt is committed has power to punish it.

2. CONTEMPT—*two classes distinguished.* Proceedings for contempt are of two classes: those to punish for disobedience of court's orders and having as the principal object the preservation of the power and the vindication of the dignity of the court; and those prosecuted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights, and to administer the remedies to which the court has found them to be entitled.

Daniel Boone Woolen Mills et al. v. Laedeke, 238 Ill. App. 92.

3. CONTEMPT—*nature of proceedings.* Contempts directed against the dignity and authority of the court are in their nature criminal or *quasi* criminal, and proceedings for their punishment generally conform to proceedings in criminal cases, while proceedings to punish for civil contempt are remedial and conform to proceedings in civil cases.

4. CONTEMPT—*violation of injunction civil contempt.* Violation of an injunction against interference with a complainant's employees is a civil contempt.

5. CONTEMPT—*change of venue.* By Venue Act, sec. 18, Cahill's St. ch. 146, ¶ 18, legislature did not intend to allow a change of venue in cases of direct criminal contempt.

6. CONTEMPT—*civil contempt proceeding in equity under Venue Act.* Proceeding for punishment of civil contempt is a proceeding in equity and falls within the purview of Venue Act, sec. 1, Cahill's St. ch. 146, ¶ 1.

7. CONTEMPT—*change of venue in civil proceeding.* Courts have inherent power, even in the absence of a statute, to grant a change of venue in a proceeding to punish for civil contempt.

8. PARTIES—*advantage of misjoinder may be taken by demurrer.* Where misjoinder of parties appears on face of bill, advantage of it may be taken by demurrer.

9. PARTIES—*joint complainants.* Joint complainants cannot maintain a bill for a several grievance.

10. EQUITY—*all parties to be entitled to recovery.* All the parties who join in a suit must be entitled to recover or none can.

11. EQUITY—*striking out complainants having no cause of action.* If any one or more of the complainants in a suit in equity fail to maintain a case against defendant, the remainder of the parties, in order to maintain their suit, must by leave of court amend their bill by striking out the names of such co-complainants who had no cause of action.

12. INJUNCTIONS—*misjoinder of parties complainant.* Two corporations could not maintain a bill to enjoin members of labor union from interfering with their employees, though one of the corporations was a subsidiary of the other, as there would be misjoinder of parties.

Appeal by defendants from the Circuit Court of Rock Island county; the Hon. WILLIAM T. CHURCH, Judge, presiding. Heard in this court at the October term, 1924. Reversed. Opinion filed June 27, 1925. Rehearing denied September 26, 1925. Remanding order stricken October 19, 1925.

WILLIAM A. CUNNEA and BEN A. STEWART, for appellants.

KENWORTHY, DIETZ, SHALLBERG, HARPER & SINNETT, for appellees; CYRUS E. DIETZ and J. J. NEIGER, of counsel.

MR. JUSTICE JETT delivered the opinion of the court.

This is an appeal by Marcus S. Laedeke, Bertha Caldwell, May Nichols and Jack Torch from an order entered July 19, 1924, by the circuit court of Rock Island county, adjudging them guilty of contempt of court for violating a temporary injunction, issued against Laedeke, Torch and others, defendants named in the bill of appellees, Bertha Caldwell and May Nichols, not being parties to said bill. The bill among other things alleges that the Daniel Boone Woolen Mills is a corporation, organized and existing under and by virtue of the laws of the State of Illinois, with its principal office and place of business in the City of Chicago, and that the Rock Island Garment Company is a corporation, organized and existing under and by virtue of the laws of the State of Illinois, with its principal office and place of business in the City of Rock Island, in the County of Rock Island, and State of Illinois.

The bill also alleges that the said two corporations are engaged in manufacturing clothing in several different places in Illinois and Iowa and that they own shops and factories in Rock Island, Moline and Davenport; that in May, 1922, the complainant Rock Island Garment Company filed in the circuit court of Rock Island county its bill for an injunction against some of the defendants, in this cause and others, alleging that it was the owner of some of the property described in the bill of appellees and engaged in the same business and asking for the same relief, and in which it petitioned for and was allowed a temporary injunction; that, having procured the injunction, it took no further action in the suit and a copy of the bill and affidavit in that proceeding, together with the order of the court for temporary injunction, and writ

of injunction, are attached to and made a part of the bill in this cause. The bill in this case is predicated upon the theory that the defendants are labor unions and officers and agents of labor unions, and particularly of the Amalgamated Clothing Workers of America, and that in pursuance of their policy, and in accordance with the constitution and by-laws of said Amalgamated Clothing Workers of America, had entered into a conspiracy to unionize the employees of the complainants, and to induce their employees, all of whom it is alleged were working for the complainants, under the several and° individual written contracts, to work for them, from a certain date until a definite certain stated period, and for designated rates and wages, to join a union and to demand an increase of their rates and wages and a shortening of the working hours and of better working conditions; and that if the complainants should refuse to accede to their requests and demand, to strike; and it is further charged in the bill of appellees that they fear and believe that the defendants will call and bring about a strike and a joining of such union or unions by their employees, if the defendants are given notice of the filing, this their bill of complaint, or of the application for a writ of injunction as prayed for, and that their rights will therefore be irreparably lost, unless such an injunction shall be immediately issued without notice.

It is alleged in the bill that the defendants Laedeke and Torch, and others named, are the hired agents of the Amalgamated Clothing Workers of America, and they are organizers of said unions to create labor differences between the complainants' employees, induce them to break their several contracts, for a given term of employment, and instigate a strike to accomplish the purpose of said labor unions. The defendants filed a general and special demurrer to the bill, specially charging that the bill is multifarious; that there is a misjoinder of the parties complainant; that

it appears on the face of the bill that one of the joint parties complainant is not entitled to any of the relief prayed for; that it filed a similar bill and for similar relief in 1922, predicated upon substantially the same matters and praying for the same relief.

Owing to the conclusion we have reached, we do not deem it necessary to set out at length the allegations of the bill, nor all of the matters and things appearing in the general and special demurrers. Petitions were filed by the joint complainants against the appellants and others, for a rule to show cause why they should not be held in contempt of court, for a supposed violation of the injunction issued by virtue of the joint bill of complaint of appellees. A hearing was had, which resulted in the court finding appellants guilty of contempt of court in violating the writ of injunction as charged in the second, third and fourth petitions, and Marcus S. Laedeke and Jack Torch were sentenced to jail for sixty days each, and Bertha Caldwell and May Nichols were each sentenced to jail for the period of thirty days. A number of reasons are assigned for reversing the judgment finding appellants guilty.

The appellants made an application for a change of venue, which was denied, and the ruling of the court is defended by counsel for appellees, because they say there is no authority of law in Illinois for a change of venue in contempt proceedings. They cite a number of authorities to support their position, and it must be at once recognized that the courts of the various jurisdictions are not in harmony upon this subject. However, it is universally conceded that in cases of direct criminal contempt committed in the presence of the court, no hearing or trial is contemplated, and none can be allowed, because no court except that against which the contempt is committed has power to punish it. Proceedings for contempt are of two classes: (1) those prosecuted to punish for disobedience of the court's orders and having as

the principal object the preservation of the power and the vindication of the dignity of the court; and (2) those prosecuted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights, and to administer the remedies to which the court has found them to be entitled. *Bessette v. W. B. Conkey Co.,* 194 U. S. 324.

Contempts directed against the dignity and authority of the court are in their nature criminal or *quasi* criminal, and proceedings for their punishment generally conform to proceedings in criminal cases, while proceedings to punish for civil contempt are remedial in their nature and, as a general rule, the proceedings conform to the proceedings in civil cases. However, in a strict sense, proceedings for the prosecution of all contempts may be best characterized as *sui generis.*

The line of demarcation between criminal contempts and civil contempts is sometimes dim and the distinction made is often shadowy. In a number of jurisdictions the violation of an injunction against interference with a complainant's employees is held to be a criminal contempt, but in Illinois it is denominated a civil contempt. *O'Brien v. People,* 216 Ill. 354, at page 369; *Franklin Union No. 4 v. People,* 220 Ill. 355; *Hake v. People,* 230 Ill. 174. Treating the offense charged in this case as a civil contempt, the question of the guilt of the defendants could not be determined by the trial judge from matters within his own knowledge, but from a consideration of and judgment upon the weight and credibility of evidence.

So far as we can learn, the courts of this State have not yet decided whether a change of venue is allowable in cases of civil contempt. In the case of *Crook v. People,* 16 Ill. 534, much relied upon by appellees, the defendants were charged with violating an injunction. An application for a change of venue was made to the circuit court of Peoria county. It

98    APPELLATE COURTS OF ILLINOIS.

Daniel Boone Woolen Mills et al. v. Laedeke, 238 Ill. App. 92.

was allowed to the circuit court of Tazewell county, not only as to the proceedings for contempt but as to the entire matter. The latter court, in turn, remanded the contempt proceedings to the Peoria county circuit court, but dismissed the bill for injunction. The Peoria county circuit court proceeded with the contempt proceedings and the defendants were adjudged guilty. The opinion of the Supreme Court discloses that the proceedings relative to a change of venue were determined under the fifth section of the statute then in force, entitled "Venue," and it was held that informations for contempt were not included within the purview of said act, and that the attempted change of venue from Peoria to Tazewell was void and therefore did not divest the circuit court of Peoria county of its jurisdiction.

A reading of the opinion in *Crook v. People, supra,* will disclose that the court treated the contempt as a criminal contempt and not as a civil contempt, and it is evident that the court's conclusions with reference to the validity of the change of venue granted in that case is predicated upon the assumption that the contempt was criminal. In view of the later holdings of the Supreme Court in the cases above cited, the contempt in the *Crook* case was civil and not criminal. The points decided in that case are: That the contempt being criminal, the fifth section of the Venue Act (now section 18, rewritten) [Cahill's St. ch. 146, ¶ 18] is not controlling and that the legislature did not intend to allow a change of venue in cases of direct criminal contempt. Therefore the views in that case have no application to the case at bar which involves a civil contempt.

It will be observed that said section 18 of the present "Venue" Act relates to criminal proceedings, while section 1 of said Act [Cahill's St. ch. 146, ¶ 1] provides for a change of venue in any civil suit or proceedings in law or equity. It is contended that proceedings for the punishment of a civil contempt

is not a suit or proceeding, either at law or in equity.
There is some contrariety of view upon this question
as expressed by the courts and text-writers, but we
are convinced that not only the weight of authority
but the logic of sound reasoning makes the matter in
such a case as this a proceeding in equity. The text
in 13 Corpus Juris, p. 60, sec. 83, after laying down
the rule that a party accused of contempt committed
in the presence of the court is not entitled to a change
of venue, proceeds as follows: "It has been held,
however, that under a statute which provides for the
removal of any cause or matter in certain cases, a
contempt proceeding may be removed," etc. The view
expressed by the text appears to be well supported
by the authorities cited in the footnotes. The Su-
preme Court in this State has repeatedly held that a
proceeding for contempt, in violating an injunction,
is a civil proceeding and that the rules of chancery
practice govern throughout. *Hake v. People, supra;
O'Brien v. People,* 216 Ill. 354. Taylor on Statutes,
p. 1323, sec. 84, says: "A proceeding to punish for
contempt is a cause or matter within the meaning of
statutes upon that subject," and cites a number of
the above-mentioned cases.

We think there is little room to doubt that a pro-
ceeding for the punishment of civil contempt is a
proceeding in equity and falls within the purview of
section 1 of the Venue Act. But, even if there were
room for doubt as to the existence of express statu-
tory authority for a change of venue in cases of civil
contempt, we would not hesitate to hold that courts
have inherent power, even in the absence of a statute,
to grant a change of venue in such matters. 27 Rul-
ing Case Law, p. 810. The reasons for not allowing
a change of venue in cases of direct criminal contempt
are no more potent and impelling than are the reasons
for allowing a change of venue in cases of civil con-
tempt. In cases of direct criminal contempt, the pro-
ceedings are summary. The facts are within the per-

sonal knowledge of the court. There is no issue to be determined. The only question relates to the degree of punishment. But, in civil contempts, the court is without any personal knowledge of the facts concerning the alleged violation. The guilt of a defendant must be proven by facts made known to the court, through the evidence of witnesses or of documents, or both. The court must then weigh the evidence, measure the credibility of witnesses and call into action his personal judgment in arriving at a decision. The very notion of refusing to allow a change of venue, after the accused has made oath to his belief that the trial judge is biased and prejudiced against him, is repugnant to our system of jurisprudence. So ardent have the courts been in upholding the right of a party to a trial before an unprejudiced judge, that it has been held that where a proper affidavit has been filed asking for a change of venue, because of the prejudice of a judge, such judge immediately loses all jurisdiction over the case, except to make the formal orders transferring the cause. This procedure is not only grounded upon the firmest principles underlying the administration of justice, but is thoroughly consistent with the proper demeanor and dignity of a judge, whose mental attitude toward the accused with respect to the particular proceeding has been challenged.

We are not called upon to express our views as to the right of a change of venue in cases of constructive criminal contempt, such as the publication of scurrilous matter concerning the presiding judge, but we are convinced that justice demands and the law provides a change of venue may be had in cases of civil contempt, where the accused makes oath that he cannot have a fair and impartial hearing because of the prejudice of the judge. It is unthinkable that, under our system of laws, a defendant may be required to submit his liberty and his estate to the

disposal of a trial judge who is solemnly charged with prejudice against the accused.

It is insisted by appellants that there is a misjoinder of parties complainant. It will be remembered that the bill of appellees alleges that in May, 1922, the complainant Rock Island Garment Company filed its bill against the defendants, or part of them, for an injunction upon substantially the same ground as is relied upon in this proceeding and a temporary injunction was obtained in the same language as prayed for and procured in this cause; that after it procured the writ it did not prosecute its bill for the relief prayed, but after the elapse of two years joined the complainant Daniel Boone Woolen Mills as a joint complainant, and set up its former claims as joint claims in this suit together with other matters occurring since its bill was filed and the said former bill is made a part of the joint bill. It is alleged in the joint bill that certain contracts had been entered into with their employees that were similar to those made individually by the Rock Island Garment Company, and the joint bill also alleges that one of the complainants operates certain shops and plants and the other complainant does likewise. The objection of the misjoinder was raised by the demurrer to the bill which has not been disposed of. Where the misjoinder appears on the face of the bill advantage of it may be taken by demurrer, which was done in this case. Joint complainants cannot maintain a bill for a several grievance. The rule is recognized in equity, as in law, that all the parties who join in a suit must be entitled to recover or none can. If any one or more of the complainants in a suit in equity fail to maintain a case against the defendant, the remainder of the parties, in order to maintain their suit against the defendant, must, by leave of court, amend their bill by striking out the names of such co-complainants who had no cause of action. *Girard v. Lehigh Stone Co.*, 280 Ill. 479, 485, 486; *Lovelace*

*v. Hutchinson,* 106 Ala. 417, 17 So. 623; Story's Eq. Pl., sec. 525c. In reaching this conclusion, we are not unmindful of the fact that it is alleged in the joint bill that the Rock Island Garment Company was and is now the subsidiary of the Daniel Boone Woolen Mills. Although the joint bill alleges that the said Daniel Boone Woolen Mills have controlled and directed the enterprise and business of the complainant, the said Rock Island Garment Company, and have sold and furnished to the said Rock Island Garment Company all woolens and clothing material used and manufactured by the Rock Island Garment Company, and have purchased and received from the said Rock Island Garment Company the entire manufactured product of the said Rock Island Garment Company, yet it remains that each of the complainants is an independent corporation, and as such is, in law, a separate and independent entity, and governed and controlled by its charter and the statute authorizing it. In their transactions, according to the allegations of the bill of complaint, they have recognized each to be an independent organization and entity, and this being true, it is evident that the said joint complainants cannot maintain a bill for a several grievance.

Other errors are assigned and argued, but owing to the conclusion we have reached, we will not discuss them further.

We are therefore of the opinion that the court was in error in denying a change of venue to the appellants, and that there is a misjoinder of the parties complainant.

The judgment and order of the circuit court of Rock Island county is reversed.

*Reversed.*